Carolyn BROWN, Petitioner-Respondent,

v.

LABOR & INDUSTRIAL RELATIONS COMMISSION of Missouri and Division of Employment Security, Respondents-Appellants.

and

Rosetta OSBORNE, Petitioner-Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, Division of Employment Security, State of Missouri and Barnes Hospital, Respondents-Respondents.

Nos. KCD 29432, KCD 29727.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Motion for Rehearings and/or Transfer Denied Jan. 31, 1979.

Application to Transfer Denied
March 13, 1979.

Sharon A. Willis, Kansas City, for Division of Employment Security in No. KCD 29432.

Rick V. Morris, Jefferson City, for Division of Employment Security in both cases.

Stanley J. Eichner, The Legal Aid Society of the City and County of St. Louis, St. Louis, for Osborne.

Thomas J. McGrath, Jeffrey B. Rosen, Miller, Simmons, Moore & Jung, P. C., Kansas City, for Brown.

John F. Gillespie, Jefferson City, for Division of Employment Security in No. KCD 29727.

Charles B. Fain, Jefferson City, for Labor and Ind. Relations Commission.

Harvey Tessler, Goldstein, Tessler, Brown & Geigermann, P. C., Clayton, for Barnes Hospital.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

These appeals present the same question of statutory meaning which, in each case, determines whether the decision of the Labor and Industrial Relations Commission to deny unemployment compensation benefits was contrary to the Employment Security Law [Chapter 288, RSMo 1969]. The appeals were argued contemporaneously, although separately, and are consolidated for opinion.

The facts are that each claimant, Brown and Osborne, held a part-time employment concurrently with a full-time employment, that each voluntarily left the part-time employment and was thereafter terminated from the full-time employment.[1] Thereupon, each made claim for unemployment compensation benefits for the involuntary termination against the account of the full-time employer only, and each claim was denied by the Division of Employment Security on the same ground: that "the claim-

---

1. The claimant Brown held part-time employment with Stix, Baer & Fuller and full-time employment with Western Electric. The claim- ant Osborne held part-time employment with Barnes Hospital and full-time employment with the McDonnell Douglas Corporation.

ant had left her [part-time] work voluntarily without good cause attributable to her work or to her employer." The part-time employer only, in each case, made protest to the claim but only part-time employer Barnes [claimant Brown] is a party on appeal.

The decision of the Division in each case was denied review by the Commission [which thereby was deemed to adopt the findings of the Appeals Referee of the Division for purposes of judicial review. § 288.-200.1, RSMo 1969]. Each claimant took an appeal to a circuit court with disparate results. The court with review of the Brown claim determined the Commission decision to deny benefits misconceived § 288.050 and was contrary to law. The court with review of the Osborne claim affirmed the Commission decision to deny benefits as in accordance with law and as based upon competent and substantial evidence.

The decision of the Commission to deny benefits rests on essential § 288.050:

1. [A] claimant shall be disqualified for . . . benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds

(1) That he has left his work voluntarily without good cause attributable to his work or to his employer[2] except that he shall not be disqualified

(a) If the deputy finds he quit such work for the purpose of accepting a more remunerative job which he did accept and earn some wages therein; or

(b) If he quit temporary work to return to his regular employer.

It is the contention of the Commission that § 288.050 clearly expresses that a claimant who has left *work* voluntarily without good cause becomes disqualified for unemployment compensation benefits. It is the premise of the Commission, therefore,

that *work* within § 288.050 and the matrix of the full Employment Security Law means *any* endeavor for pay, part-time or full-time, so that a voluntary separation for *any* concurrent employment without good cause disqualifies for benefits and does not restore eligibility until the claimant has earned wages equal to ten times the weekly benefit. The claimants contend, rather, that *work* within the statute means *all employments*, and since both continued to be employed after quittance from the part-time jobs, they remained eligible for benefits upon involuntary termination of the full-time employments in which they continued. In a word, the claimants understand the statute to mean that one who voluntarily leaves a part-time job, yet remains fully employed otherwise, has not *left his work*.

We frame the issue for our decision: Does one who works concurrently at part-time and full-time employments and leaves the part-time employment without good cause thereby become disqualified for employment benefits upon involuntary termination of the full-time employment?

The Employment Security Law does not directly address this question. There are intimations within the provisions of this intricate enactment and the judicial comments upon it that concurrent employments are not a contemplated subject matter of the law. The Employment Security Law declares the public policy that [§ 288.020]

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemploy-

---

2. The claimant Brown left her employment with Stix, Baer & Fuller because the part-time work, when added to her regular employment, injured her health. The claimant Osborne left her part-time employment with Barnes Hospital because the schedule of hours came into conflict with those required by her full-time employer which were changed and could not be accommodated by the part-time employer. Neither claimant Brown nor Osborne contends to have proved "good cause" for voluntary termination of the part-time employment.

ment reserves to be used for the benefit of persons unemployed through no fault of their own.

This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

■ The manifold purposes declared by the Employment Security Act are, among others, to relieve against economic distress from involuntary unemployment and to facilitate reemployment. The enactment does not aid idlers or those who are not honestly open to the opportunity of the labor market. *Golden v. Industrial Commission of Missouri*, 524 S.W.2d 34, 36[1–6] (Mo.App. 1975). A person who leaves a part-time employment, but continues in a concurrent regular full-time employment, however, neither faces economic distress nor needs reemployment. These purposes of the law, given effect by the corollary of § 288.040.-1(1) & (2) that a claimant for unemployment benefits shall be *available for work and earnestly seek work*, have no relevance to a person who diligently maintains concurrent employments and then, for personal reason, gives up the fragmentary employment but remains fully employed.

■ The term *unemployment* as used in the Employment Security Law means *lack of employment [A. J. Meyer & Co. v. Unemployment Compensation Commission*, 348 Mo. 147, 152 S.W.2d 184[5] (1941)], a condition which results from the failure of industry to provide employment [*Haynes v. Unemployment Compensation*, 353 Mo. 540, 183 S.W.2d 77, 81[7–10] (1944)]. The public policy which girds the Employment Security Law that benefits shall be for *persons*

*unemployed through no fault of their own* [§ 288.020.2], therefore, is not infringed by a quittance, voluntary or involuntary, from a part-time employment to retain a full-time employment done without design to give up wage rewards for compensated unemployment. *Belle St. Bank v. Ind. Com'n Div. of Emp. Sec.*, 547 S.W.2d 841, 846[4] (Mo.App.1977).

■ The fallacy of the Commission decisions is that they accord the *good cause* condition of § 288.050 a relevancy to the claims of Brown and Osborne which the purposes of the Employment Security Law do not intend. This enactment promotes the general welfare by a scheme of benefits which operates to restore and maintain a minimum level of earnings. § 288.060; *Swafford v. Industrial Commission*, 462 S.W.2d 147, 151[2–5] (Mo.App.1970). The benefits issue when an insured worker is *totally unemployed* or only *partially unemployed*. Sections 288.030.23(a) & (b). In either case, the question is simply whether the earnings fall below a statutory minimum for want of employment. A worker in regular full employment [by self-evident definition] is neither partially or totally unemployed and so does not qualify for benefits under the enactment while the full employment persists. Section 288.040. Thus, the *good cause* of § 288.050 absolutely disqualifies for benefits when the voluntary separation from work results in unemployment but not, as of course, when the relinquishment of work does not result in unemployment. The decisions of the Commission to deny benefits for the involuntary unemployment of the claimants, therefore, contradict the dominant public policy of the enactment that the fund set apart by law for the purpose be *used for the persons unemployed through no fault of their own.*[3]

3. The single decision which treats the question presented is *McCarthy v. Iowa Employment Security Commission*, 247 Iowa 760, 76 N.W.2d 201 (1956). That court, also, confronted the claim for benefits of a worker who had voluntarily left a part-time employment but who continued in a full employment, but was thereafter involuntarily terminated from that job. The Iowa Employment Security Law contained pro-

visions of declaration of purpose and disqualification virtually identical with §§ 288.020.1 and 288.050, RSMo 1969. That court rested decision [l. c. 204] to award benefits to the claimant for the involuntary loss of full employment on the paramount public policy that a fund be set aside "for the benefit of persons unemployed through no fault of their own."

Section 288.020.1. This preponderant rationale, by the direction of the enactment, is to be given a liberal construction. Section 288.020.2. The disqualification provision that a claimant who leaves work voluntarily without good cause [§ 288.050], cognately, requires a strict construction. *Citizens Bank of Shelbyville v. Industrial Commission*, 428 S.W.2d 895, 897[4–6] (Mo.App. 1968).

The claimants assert only against the full-time employers who do not contest payment of benefits. The part-time employers, Stix, Baer & Fuller and Barnes Hospital, nevertheless protest. The claimants contend that the part-time employers have no interest or status to litigate and so the benefits should issue as a matter of law from the full-time employers. The procedure of the Commission, however, allows a claimant no initiative as between employers. By the agency practice, payments to a claimant deemed eligible are surcharged against the account of every base period[4] employer, and a claimant deemed ineligible against *any* base period employer becomes ineligible for benefits as to *all* such employers.

The benefits for unemployment compensation issue as provided by the Employment Security Law. That enactment grants plenary authority to the Commission to make regulations for the fair administration of the law. Section 288.220.5. The practices adopted by the agency, however, fail to accommodate the disqualification provision of § 288.050 for voluntary termination of employment with the public policy of § 288.020.1 for payment of benefits to persons unemployed through no fault of their own in cases where the two employments were concurrent. These provisions, taken literally, result in conundrum in the absence of a system of regulation which separates the accounts of concurrent employers and

withholds charges for benefits from the employer against whom the claimant had committed an act of disqualification.

■ The integral Employment Security Act interrelates eligibility and disqualification with the amount of benefits a worker may receive and the liability of employer to subscribe the benefits. [Section 288.100; see, generally, Estes, *Protecting Your Business Client's Employment Security Account*, 18 J. of Mo. Bar 223 (1962)]. The ultimate tax liability of an employer is determined by the number of employees who claim against that account. The employer, however, is protected against the claim of an employee who has committed an act of disqualification against him.[5] To implement this scheme the Commission is directed to "maintain a separate account for each employer" [§ 288.100.1(1)] and "*by regulation* [to] *prescribe the manner in which benefits shall be charged against the accounts of several employers for whom an individual* performed service in employment during the same calendar quarter or *performed service in employment at the same time* and the manner in which partial unemployment benefits shall be charged against the accounts of employers." Section 288.100.-1(1) [Emphasis added.] Thus, the law not only contemplates that a worker involuntarily made unemployed shall have the benefit of compensation, but also that no employer—in this case, the part-time employers of claimants Brown and Osborne—directly affected by an act of disqualification of an employee shall suffer tax liability on that account.

The Commission justifies the practice to deny benefit absolutely to a worker who has committed an act of disqualification against *any* base period employer by reference to § 288.050.1 that a claimant who voluntarily leaves employment without good cause "shall be disqualified . . .

---

**4.** " 'Base period' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 288.030.2.

**5.** The direction of the statute is clear: "No benefits based on wages paid prior to the date of any act for which a claimant is disqualified under section 288.050 shall be chargeable to any employer directly involved in such disqualifying act." Section 288.100.1(4)(a).

for benefits" and does not have them restored "until after [the worker] has earned wages equal to ten times his weekly benefit." The contention goes: by the literal statute the disqualification is for *benefits* without exception until the eligibility has been restored by the elapse of the requisite period of earned wages. This posture, however, neglects § 288.100, in pari materia, which defines the credits and charges to an employer account:

> *No benefits* based on wages paid prior to the date of any act for which a claimant is disqualified under section 288.050 *shall be chargeable to any employer directly involved in such disqualifying act.* [§ 288.100.1(4)(a); emphasis added].

These statutes considered within a reasonable interrelationship intend that where the circumstances require—as when a worker voluntarily relinquishes a concurrent employment but remains fully employed—the predominant purpose of the enactment to furnish benefits for involuntary unemployment shall not be altogether denied but shall derive from those base period employers against whom the worker has not committed an act of disqualification. This intendment is made peremptory by the direction of § 288.100.1(1), also in pari materia, that the Division "*shall by regulation prescribe the manner in which benefits shall be charged against the accounts of several employers for whom an individual performed service in employment* during the same calendar quarter or *performed service in employment at the same time* . . ." [Emphasis added.] The failure of the Commission to adopt a regulation for the exigency of concurrent employments, one voluntarily relinquished and the other involuntarily terminated, results in a practice which unfairly exercises the regulatory power and disserves the remedy the law intends.

The alternative remains: a procedure adopted under the authority of the Commission to regulate the administration of the law whereby, in cases of concurrent employments terminated first voluntarily and then involuntarily, no base period employer directly concerned with an act of disqualification by an employee shall suffer any liability to that employee.

We conclude that the decisions of the Commission to deny benefit altogether to claimants Brown and Osborne were contrary to law. The causes are remanded to the Commission for reconsideration of the claims in accordance with our direction that benefits be allocated to Brown and Osborne against the base period employers, except Stix, Baer & Fuller and Barnes Hospital, respectively.

The *Brown* appeal [KCD 29,432] raises another contention. In the circuit court the Commission moved dismissal of appeal on the ground that the court lacked jurisdiction over the subject matter or parties because the petition for judicial review by Brown failed to join Stix, Baer & Fuller as an interested and necessary party under § 288.100. The circuit court rules that since claimant Brown did not assert against part-time employer, Stix, Baer & Fuller, that employer had no status to protest the claim for unemployment compensation against the account of full-time employer, Western Electric, against which alone Brown claimed. The refusal to dismiss by the circuit court resulted in no prejudice to protester, Stix, Baer & Fuller, but not for the reason ascribed by that court.

The enactment provides that the *Director or any other party aggrieved* may have judicial review of a Commission decision by petition [§ 288.210]

> served upon a member of the commission or upon such persons as the commission may designate . . . *[S]uch service shall be deemed completed service on all parties,* but there shall be left with the party served as many copies of the petition as there are defendants and the *commission shall forthwith mail one such copy to each such defendant.* [Emphasis added.]

That section provides also that the Division shall be a necessary party to any judicial action involving its decision. Another provision [§ 288.070.1] requires the Division to notify all base period employers of claims

filed and constitutes any such employer who makes a written protest against allowance of benefit

> *an interested party* to any determination allowing benefits during the benefit year *until* such time as *the issue or issues raised by the protest are resolved by a determination or decision which has become final.* [Emphasis added.][6]

Within this delineated procedure, the Division must notify any base period, whether proceeded against by the claimant or not, and an employer-protester remains an interested party until final disposition. In a case where the issue of compensation benefit goes to judicial review, § 288.210 imposes on the Commission the duty to notify the employer-protester-defendant by mail.

It is clear, then, that Stix, Baer & Fuller, an original protester against the compensation claim of employee Brown, remained an interested party in that subject matter until settled by final decision and was entitled to notice of the petition for judicial review of denial of that claim. The service by claimant Brown of the petition upon the Commission, however, was *completed service on all parties* by the effect of statute. [§ 288.210]. It was the duty of the Commission thereafter to *forthwith mail one such copy to each such defendant* —Stix, Baer & Fuller included. [§ 288.210]. Thus, the Commission has no ground to complain that an employer in interest has not been heard on review from a lapse for which the claimant has no responsibility. Although employer-protester, Stix, Baer & Fuller has been denied a right of procedure, the joinder of the Division as a necessary party on judicial review and the coincident interest of the Division with the employer-protester to sustain the decision to deny the claim for compensation protected the substantive right of Stix, Baer & Fuller against infringement. Our decision which excludes the part-time employers from liability in these special circumstances, therefore, works no detriment of property despite procedural irregularity.

In the Brown appeal [KCD 29,432] the Commission contends the final point of error that the circuit court improperly taxed the costs of the action against the Commission. The Labor and Industrial Relations Commission and the Division of Employment Security are representatives of the State of Missouri and not subject to assessment of costs in the proceeding. *Dubinsky Brothers, Inc. v. Industrial Com'n of Mo.,* 373 S.W.2d 9, 16[7] (Mo. banc 1963).

The judgment in KCD 29,432 [the *Brown* claim] is modified to delete taxation of costs against the Commission and as modified is affirmed. The cause is remanded to the circuit court for further remand to the Industrial Commission for entry of award for unemployment compensation benefits in favor of claimant Brown and against full-time employer Western Electric.[7]

The judgment in KCD 29,727 [the *Osborne* claim] is reversed. The cause is remanded to the circuit court for further remand to the Industrial Commission for entry of award of unemployment compensation benefits in favor of claimant Osborne and against full-time employer McDonnell Douglas Corporation.

All concur.

---

**6.** The literal § 288.070.1 which deems an employer-protester an interested party to any determination *allowing benefits*, on elementary principles of due process, must be understood to mean an issue which *involves determination of* the *benefits* against which the employer protests. It is evident that in the course of the determination process first by a Division deputy, then by the Appeals Tribunal, then by the Commission, and finally on judicial review, any determination or decision, either to award or deny benefits, can be reversed. The employer remains interested until final determination of that property interest.

**7.** The motions of defendant-claimant Brown for Damages For Frivolous Appeal under Rule 84.-19 and for Dismissal of Appeal or In The Alternative to Confirm Judgment of the circuit court for violation of Rule 84.04 are denied.