MID–MISSOURI MENTAL HEALTH
CENTER, Appellant,

v.

Tammy POLSTON and Division
of Employment Security,
Respondents.

No. WD 56587.

Missouri Court of Appeals,
Western District.

July 13, 1999.

Beth S. Riggert, Asst. Atty. Gen., Jefferson City, for appellant.

Ronald J. Miller, Jefferson City, for respondent Division of Employment Security.

Before EDWIN H. SMITH, P.J., and HANNA and SPINDEN, JJ.

EDWIN H. SMITH, Presiding Judge.

Mid–Missouri Mental Health Center (MMHC) appeals from the decision of the Labor and Industrial Relations Commission (the Commission) awarding unemployment compensation benefits to Tammy Polston, the respondent, under § 288.040, RSMo Supp.1997.

In its sole point on appeal, MMHC claims that the Commission erred in deciding that the respondent was not disqualified from unemployment compensation benefits under § 288.050.1, RSMo Supp. 1997, because she voluntarily left her full-time employment with MMHC without good cause and had not yet earned wages for insured work equal to ten times her weekly benefit amount.

We affirm in part, and reverse and remand in part.

### Facts

On January 14, 1997, the respondent began full-time employment as a clerk typist II with MMHC. On August 7, 1997, while still working full time at MMHC, she started working part time at Casey's General Store, a convenience store. She continued to work both jobs until January 20, 1998, when she voluntarily resigned from her job at MMHC.

Sometime after resigning from her job at MMHC, the respondent began full-time work at Casey's. On February 3, 1998, Casey's terminated her employment due to an absence from work the previous day. Thereafter, she filed a claim for unemployment compensation benefits, pursuant to § 288.040, RSMo Supp.1997, effective February 1, 1998. MMHC protested the payment of such benefits to the respondent.

On March 3, 1998, a deputy of the Division of Employment Security (the Division) determined that the respondent was disqualified, pursuant to § 288.050.1, RSMo Supp.1997, from receiving benefits because she "left work with [MMHC] voluntarily without good cause attributable to her work or employer." The respondent appealed the deputy's determination to the Division's appeals tribunal. At a hearing before the appeals tribunal on April 7, 1998, the respondent testified that she resigned from her job at MMHC because she lost her driver's license for a year making it difficult for her to get to work at MMHC in Columbia, Missouri, from her home in Fulton, Missouri, and, further, that she was going to begin working full time at Casey's. She testified that she began working full time at Casey's "directly" after she quit her job at MMHC. On April 17, 1998, the appeals tribunal reversed the Division deputy's determination, deciding that the respondent was not disqualified from unemployment compensation benefits by reason of her leaving work with MMHC voluntarily while "still working full-time for another employer."

MMHC appealed the appeals tribunal's decision to the Commission. On October 23, 1998, the Commission affirmed the decision of the appeals tribunal, adopting its decision and issuing a separate opinion. The Commission cited *Brown v. Labor and Industrial Relations Commission,* 577 S.W.2d 90 (Mo.App.1978) in support of its decision.

This appeal follows.

### Standard of Review

■ Our review of the Commission's decision is governed by § 288.210, RSMo

Supp.1995, which provides, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

In our review under this section, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Bunch v. Division of Employment Sec.*, 965 S.W.2d 874, 877 (Mo.App.1998) (*citing Division of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. *banc* 1996)).

In *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995), this court outlined the process for review of an award made by the Commission in worker's compensation decisions. In *Travelers Equities Sales, Inc. v. Division of Employment Sec.*, 927 S.W.2d 912, 917 (Mo.App.1996) we held that the *Davis* standard was applicable to employment security decisions as well. Re-

view is a two-step process. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the Commission's decision. *Davis*, 903 S.W.2d at 571. If it does, the court, in the second step, makes a determination as to whether the decision is against the overwhelming weight of the evidence. *Id.* In this second step, the reviewing court considers all of the evidence in the record, including that not favorable to the decision. *Id.*

*Bunch,* 965 S.W.2d at 877.

## I.

■ In its sole point on appeal, MMHC claims that the Commission erred in deciding that the respondent's termination of her full-time employment with MMHC did not disqualify her from receiving immediate unemployment compensation benefits pursuant to § 288.050.1, RSMo Supp.1997.[1] Specifically, MMHC contends that the appellant was not eligible for such benefits because she voluntarily left her employment with MMHC without good cause attributable to her employment or employer and had not yet earned wages equal to ten times her weekly benefit amount.

In its decision on the respondent's claim for benefits, the Commission affirmed in a separate opinion the decision of the appeals tribunal awarding the respondent benefits. As such, the Commission adopted the finding of the tribunal that the

---

1. Section 288.050, RSMo Supp.1997, provides, in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer; except that the claimant shall not be disqualified:

(a) If the deputy finds the claimant quit such work for the purpose of accepting a more remunerative job which the claimant did accept and earn some wages therein;

(b) If the claimant quit temporary work to return to such claimant's regular employer; or

(c) If the deputy finds the individual quit work, which would have been determined not suitable in accordance with paragraphs (a) and (b) of subdivision (3) of this subsection, within twenty-eight calendar days of the first day worked

. . . .

respondent voluntarily left her employment with MMHC, which finding is supported by the record. Given this finding, in deciding whether the respondent was entitled to benefits, the Commission was, as was the tribunal, required to determine whether she did so with or without good cause in that, if a claimant voluntarily leaves employment, § 288.050, RSMo Supp.1997, makes good cause a condition precedent to receiving immediate benefits. *Fair-Kincaid v. Division of Employment Sec.*, 964 S.W.2d 545, 548 (Mo.App.1998).

"The question of whether a claimant had good cause to leave his employment is a legal issue and thus we do not defer to the Commission's determination on the matter." *Bunch*, 965 S.W.2d at 877 (*citing Sokol v. Labor and Indus. Relations Comm'n*, 946 S.W.2d 20, 26 (Mo. App.1997)).

> "Good cause" has been interpreted as meaning "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." The conditions that motivate the employee to voluntarily leave "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." Two elements have thus been identified as necessary in establishing good cause—reasonableness and good faith. . . .
> Whether the employee's action was reasonable depends upon whether the employee can prove that his concerns are real or that any reasonable worker would have these concerns. Good faith requires that the employee make a showing that an attempt was made to resolve the dispute before he took the drastic step of quitting the job.

*Id.* at 878 (citations omitted).

The phrase "good cause" has no precise meaning and depends on the facts of each case. *Department of Natural Resources and Recreation v. Lossos*, 960 S.W.2d 537, 540 (Mo.App.1998). Good cause has been interpreted as not including reasons, which perhaps may be legitimate and necessary from a personal standpoint, but are not causally connected to the employee's work or employer. *Smith v. Labor and Indus. Relations Comm'n*, 869 S.W.2d 101, 103 (Mo.App.1993).

Although the Division deputy, in initially reviewing and denying the respondent's claim, expressly found that she left her employment with MMHC *without good cause*, neither the Commission nor the appeals tribunal expressly referenced good cause. However, in approving the respondent for benefits, both the Commission and the tribunal relied on the holding in *Brown v. Labor and Industrial Relations Commission*, 577 S.W.2d 90 (Mo.App.1978), which dealt with the issue of whether a claimant quitting part-time employment without good cause, while keeping his or her concurrent full-time employment, was disqualified from benefits. Implicit in their reliance on *Brown* for approving benefits for the respondent is the fact that they found that she voluntarily left her job with MMHC without good cause attributable to her work or employer. This is so in that, if the Commission had found that she left her job with MMHC voluntarily, but with good cause, it would have been unnecessary to rely on *Brown* in reaching its decision that she was not disqualified from benefits. Moreover, for the reasons stated, *infra*, the record supports such a finding.

At the hearing before the tribunal, the appellant testified that she resigned from her job at MMHC because she had lost her driver's license for a year, making it difficult for her to get to work at MMHC in Columbia from her home in Fulton, and that she had another job. And, while the reasons given for her resigning from her job at MMHC may have been justifiable personal reasons, they were not attributable to her work or MMHC, and, as such, under § 288.050.1, RSMo Supp.1997, she is deemed to have left her work voluntarily without good cause attributable to her work or her employer. *See Woolridge v. Labor and Indus. Relations Comm'n*, 643 S.W.2d 317, 318–19 (Mo.App.1982) (holding that an employee's lack of transportation

to her job due to personal circumstances was not good cause attributable to her work or employer for voluntarily leaving her job).

■ Having determined that the Commission found and the record supports a finding that the respondent voluntarily left her employment with MMHC without good cause attributable to her work or employer, the respondent would have been eligible for immediate benefits only if one of the exceptions found in § 288.050.1, RSMo Supp.1997, applied, *Doerer v. Labor and Indus. Relations Comm'n,* 617 S.W.2d 501, 505 (Mo.App.1981), or the Commission was correct in determining that the decision in *Brown* required otherwise. As to the application of one or more of the exceptions in the instant case, none is discussed by the Commission, the tribunal or the Division deputy in their decisions. Moreover, the record does not support it. As such, the issue for us to decide is whether the Commission was correct in determining that the holding in *Brown* was controlling such that the respondent was entitled to immediate benefits even though she voluntarily left her employment with MMHC without good cause.

In *Brown,* the two claimants each held a part-time job concurrently with a full-time job. *Brown,* 577 S.W.2d at 91. Both voluntarily left their part-time jobs, while maintaining their full-time employment from which they were later involuntarily terminated. *Id.* The Commission denied their claims for benefits because they left voluntarily their part-time jobs without good case. *Id.* at 91–92. In reversing, this court opined that unemployment compensation benefits issue only when an employee is considered either totally or partially unemployed, and because an employee who has a full-time job is neither totally nor partially unemployed, he or she does not qualify for benefits as long as the full-time employment persists. *Id.* at 93. And, as such, as long as an employee remains employed full time after voluntarily terminating other employment without good cause, this termination

of other employment is irrelevant to a determination of whether the subsequent involuntary termination from the full-time employment entitles the employee to immediate benefits. Hence, the *Brown* court held that, because the claimants' leaving their part-time jobs without good cause did not result in their being unemployed, either totally or partially, it had no bearing and was irrelevant on the issue of whether they were qualified for immediate benefits as a result of their subsequent involuntary termination from their full-time employment. *Id.* Thus, *Brown* teaches us that as long as an employee remains employed full time, a voluntary leaving of other concurrent employment without good cause would be irrelevant to a subsequent determination of whether the employee is entitled to immediate benefits upon being involuntarily terminated from the full-time employment. This is consistent with the legislative purpose of § 288.050, RSMo Supp.1997, which "is to create an incentive for persons who are employed to remain employed." *Bunch,* 965 S.W.2d at 877 (*citing Hessler v. Labor and Indus. Relations Comm'n,* 851 S.W.2d 516, 518 (Mo. *banc* 1993)).

In our case, while the respondent held a part-time job concurrently with a full-time job, as did the claimants in *Brown,* unlike there, she voluntarily left her concurrent full-time job, rather than her part-time job. As such, if by her resignation from her full-time job of MMHC, she was at the time only employed part time at Casey's, she was partially unemployed, and *Brown* would not apply. However, a careful reading of the record would disclose substantial and competent evidence from which the Commission could have found that the respondent's leaving her work at MMHC without good cause did not result in her being unemployed for any time period because she went directly from full-time employment with MMHC to full-time employment with Casey's. In this respect, it reflects that the respondent testified that the reasons she gave to MMHC for leaving her employment was because "[she] was

losing [her] driver's license and [she] was going to begin working at Casey's full time." She also testified that she began to work at Casey's "directly after [leaving MMHC]." The record would also reflect that in her resignation she did not give a reason for leaving, but in her exit questionnaire, she stated she was leaving because she was moving, and because of family matters, commuting distance, another job, and too much travel. The record is otherwise devoid of any evidence on the issue of when the respondent became employed full time at Casey's.

Although the application of *Brown* to the facts of this case would vindicate the Commission's decision as to the respondent's not being disqualified from immediate benefits for having voluntarily left her work with MMHC without good cause, its application would not allow the allocation of benefits against MMHC as a base period employer. This is so in that § 288.100.1(4)(a), RSMo Supp.1996 expressly provides that: "[n]o benefits based on wages paid for services performed prior to the date of any act for which a claimant is disqualified pursuant to section 288.050 shall be chargeable to any employer directly involved in such disqualifying act." With respect to this section, this court in *Brown* held that

> where the circumstances require—as when a worker voluntarily relinquishes a concurrent employment but remains fully employed—the predominant purpose of the enactment to furnish benefits for involuntary unemployment shall not be altogether denied but shall derive from those base period employers against whom the worker has not committed an act of disqualification.

*Brown*, 577 S.W.2d at 95. Here, while the respondent's quitting of her job with MMHC without good cause and going directly to full-time employment with Casey's so that there was never a period of unemployment, full or partial, would not prevent her from receiving immediate benefits, because § 288.050, RSMo Supp.1997 disqualifies an employee from immediate benefits who quits without good cause,

here, her quitting without good cause would prevent her from receiving benefits which were allocated to MMHC's employer account.

### Conclusion

For the reasons stated and in keeping with *Brown*, we affirm the Commission's decision to the extent it awards benefits to the respondent, but reverse to the extent it would allocate benefits against MMHC as a base employer and remand to the Commission for reconsideration of the respondent's claim in accordance with our direction that benefits be allocated to her against her base period employers, except MMHC. *Brown*, 577 S.W.2d at 95.

HANNA, J., concurs.

SPINDEN, J., concurs in separate opinion.

PAUL M. SPINDEN, Judge, concurring.

I concur, but I write separately to question the lawfulness of § 288.210, RSMo Supp.1998, which endeavors to restrict this court's review to four stated grounds "and no other." This unlawfully limits the scope of judicial review of administrative agency's actions guaranteed by Mo. CONST. art. V, § 18 (1945).

Article V, § 18, establishes the "minimum standard for judicial review of administrative decisions." *Jarvis v. Director of Revenue*, 804 S.W.2d 22, 25 (Mo. banc 1991). The General Assembly may grant the judiciary the power to engage in a broader review, so long as the expanded power does not conflict with the federal or state constitutions. *State ex rel. St. Louis Public Service Company v. Public Service Commission*, 365 Mo. 1032, 291 S.W.2d 95, 102 (banc 1956); *State ex rel. Marco Sales, Inc. v. Public Service Commission*, 685 S.W.2d 216, 218 (Mo.App.1984).

The General Assembly cannot limit our review in the manner set forth in § 288.210 because, as the Supreme Court has instructed:

> [I]rrespective of what scope of judicial review of administrative decisions was

provided by existing or future statutes dealing with specific agencies, the scope of review would in any event be as broad as that minimum review provided for by the constitution. [A]ny statute providing for a narrower scope of review was no longer effective because of the constitutional provision noted.

*Public Service Commission,* 291 S.W.2d at 101. Section 288.210 endeavors to limit our review to the four grounds stated. Article V, § 18, mandates that our review "shall include the determination whether [an administrative agency's final decisions, findings, rules, or orders] are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Only the most esoteric of issues would not be subsumed within these two grounds. The Constitution certainly authorizes us to review on more grounds than the four which the General Assembly enumerated in § 288.210.

With that clarification, I concur with the majority's opinion.