Terry **LANCE**, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY**, Respondent.

No. WD 72136.

Missouri Court of Appeals, Western District.

Feb. 1, 2011.

Terry Lance, Fillmore, MO, Pro Se.

Jeannie D. Mitchell, Jefferson City, MO, for Respondent.

Before: THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Terry Lance appeals from the Labor and Industrial Relations Commission's (Commission's) decision that he was disqualified from receiving unemployment benefits for leaving his employment voluntarily without good cause attributable to the work or to the employer. We reverse and remand.

**Factual and Procedural Background**

Mr. Lance was laid off from his employment at Gray Manufacturing in February of 2009. In the process of applying for unemployment benefits, Mr. Lance learned that if he qualified for the State's "Dislocated Worker Program," he could return to school to finish his Bachelor's Degree. He applied and, after preliminary testing, qualified for the program. On February 27, 2009, Mr. Lance filed a Free Application for Federal Student Aid. On March 4, 2009, he began working the third shift as a temporary employee for Kelly Services (Kelly) in the labeling and packaging department of one of its clients. On March 11, 2009, he signed an "Employment Plan" in partnership with the Division of Workforce Development that indicated "Service/Activity ... Enroll client into the [Dislocated Worker] program."

On May 6, 2009, Mr. Lance left his temporary employment with Kelly after giving notice. He began attending classes at Northwest Missouri State University on May 11, 2009.[1] Mr. Lance sought unemployment benefits, which Kelly protested. A deputy determined that pursuant to section 288.050,[2] because Mr. Lance left work voluntarily without good cause attributable to the work or the employer, he was disqualified from receiving benefits until he had earned wages equal to ten times his weekly benefit amount. Mr. Lance appealed that determination.

The Appeals Tribunal held a telephone conference. Mr. Lance testified that he worked the ten weeks for Kelly because he was uncomfortable not working while waiting for classes to start, and he did not realize it would cause him to lose his eligibility for unemployment compensation. The Appeals Tribunal affirmed the deputy's determination. Mr. Lance then sought review by the Commission, which found the Appeal Tribunal's decision to be supported by competent and substantial evidence on the whole record and in accord with Missouri unemployment law. Mr. Lance appeals.

**Standard of Review**

We review the Commission's decision to determine if, based upon the whole record, the Commission could reasonably have reached its result. *Mena v. Cosentino Group, Inc.*, 233 S.W.3d 800, 803 (Mo.App. W.D.2007). We may modify, reverse, remand for rehearing, or set aside its decision if we determine that: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4)

1. The Division argues that Mr. Lance provided "no evidence or documentation" to prove he enrolled in the Dislocated Worker Program. However, Mr. Lance testified that he enrolled; Kelly offered no evidence to contravene.

2. Statutory references are to RSMo 2000 and the Cumulative Supplement 2009.

there was no sufficient competent evidence in the record to warrant the making of the award. § 288.010. If supported by competent and substantial evidence, the Commission's factual findings are conclusive and binding. *Mena*, 233 S.W.3d at 803. On issues of law, however, we do not defer. *Id.*

### Legal Analysis

■ In his sole point, Mr. Lance argues that the Commission erred in disqualifying him from receiving benefits because he left his employment due to the work retraining program in which he had previously agreed to enroll. He contends that section 288.055 prevented him from being disqualified because it provides that claimants may not be disqualified from receiving benefits for leaving temporary work during retraining. The Division argues that the Commission's finding that Mr. Lance voluntarily left his employment without good cause attributable to the work or the employer was correct and that he was not eligible for the protections of section 288.055. Mr. Lance does not dispute that he left his employment voluntarily and that it was not for cause attributable to his work or his employer. Consequently, we confine our review to the issue of whether the Commission's decision was erroneous because section 288.055 protected Mr. Lance from disqualification under section 288.050.

Section 288.050 provides in relevant part:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause at-

tributable to such work or to the claimant's employer.

The provision thus disqualifies those who leave work voluntarily without good cause attributable to the work or the employer. *See, e.g., Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 170 (Mo.App. S.D.2004). Section 288.055 provides in relevant part:

1. Notwithstanding any other provision of this chapter, an unemployed claimant otherwise eligible for benefits shall not become ineligible for benefits because of his enrollment in and satisfactory pursuit of a retraining course of instruction which the director has approved for the individual.

. . . .

6. *An unemployed claimant otherwise eligible for benefits under this section and chapter shall not be disqualified* for refusing suitable employment offered to him, or failing to apply for suitable employment when notified by an employment office, or *for leaving his most recent temporary work, accepted during his retraining, if* the acceptance of or applying for suitable employment or *continuing such work would require him to terminate his retraining course of instruction.*

(Emphasis added.)

On March 11, 2009, Mr. Lance signed an agreement with the Division of Workforce Development of the Missouri Department of Economic Development to be retrained in the Dislocated Workers Program. Mr. Lance had already been determined by the Director of the Division to meet the eligibility qualifications for retraining. Mr. Lance argues that, for all practical purposes, he was already in retraining prior to the temporary work with Kelly because he had applied for the program and received approval to participate. He argues that his acts therefore placed him under the

ambit of the statute's requirement that the temporary work had to be "accepted during his retraining." Under the Division's interpretation, however, Mr. Lance's temporary work was not "accepted during his retraining" because he had not yet enrolled or started classes. No case has addressed section 288.055. We are thus required to determine the scope of the phrase "during his retraining."

 In construing Missouri employment security law, we are to determine the legislature's intent from the language used; to give effect to the intent if possible; and to apply the plain and ordinary meaning to words used in the statute. *Ross v. Whelan Sec. Co.*, 195 S.W.3d 559, 564 (Mo.App. S.D.2006). To determine the legislature's intent, we look to the entire statute and attempt to harmonize its provisions. *Id.* at 565. We also consider the statute's history and the problems it addresses. *Id.*

We look to the legislature's purpose in enacting employment security and to its specific purpose in exempting retraining from disqualification. The Missouri Legislature set forth state policy that we must use to interpret and apply employment security law. *See* § 288.020. It declared that:

> Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity.... [T]he public good and the general welfare of the citizens of this state require ... compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

§ 288.020.1. The Legislature then directed that we must construe employment security law liberally "to accomplish its purpose to promote employment security ... by increasing opportunities for jobs."

§ 288.020.2. We must therefore give provisions disqualifying claimants a strict construction. *Brown v. Labor & Indus. Relations Comm'n*, 577 S.W.2d 90, 94 (Mo.App. 1978); *see also Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 620 (Mo.App. S.D. 2007).

Employment security is intended to relieve the economic distress caused by involuntary unemployment and to facilitate reemployment. *Id.* at 93. The disqualifying provisions are intended to exclude those who choose not to work or cause their own termination through misconduct or inaction. *Ross*, 195 S.W.3d at 565. This is because the law "does not aid idlers or those who are not honestly open to the opportunity of the labor market." *Brown*, 577 S.W.2d at 93. We must infer the purpose of the retraining exemptions is to promote employment security. *See* § 288.020.

It is our view that the Division's argument is in conflict with the chapter's intent to promote employment security and to use unemployment reserves for the benefit of persons unemployed through no fault of their own. The purpose of the disqualification has no relevance here. *See Brown*, 577 S.W.2d at 93–96 (reversing Commission's disqualification of claimant where the purposes of the disqualification had no bearing). Mr. Lance was laid off by his employer through no fault of his own. He sought services offered by the state, which found him eligible for retraining. He pursued retraining. While waiting for classes to begin, Mr. Lance undertook temporary employment rather than collecting unemployment benefits.

In addition to the general purposes of Missouri employment security law, we also consider the specific purposes of the legislation and government programs relating to the retraining of workers. Clearly the

purposes of such programs include allowing hard-working, motivated, mature workers who have had long-term employment eliminated by lay-offs and shutdowns to catch up to the changes in economic development and technology by retraining. *See, e.g.,* 19 U.S.C. section 2296. Because of the remedial nature of the statute, we seek to avoid taking an overly strict approach to disqualifying people from unemployment benefits while they undergo retraining. We note, for instance, that the similar federal retraining statute provides that a worker "may not be determined to be ineligible or disqualified for unemployment insurance or program benefits" if the worker "left work ... that the worker engaged in on a temporary basis during a break in such training or *a delay in the commencement of such training.*" (emphasis added). 19 U.S.C. section 2296(d). While section 288.055 does not set forth the exact same language as 2296(d), we submit that the statutory objectives and values are the same. Here, of course, Mr. Lance left temporary work that he engaged in during "a delay in the commencement of such training."

The Division's extremely narrow interpretation of "accepted during retraining" would deny a claimant benefits because he pursued temporary employment while waiting for retraining classes to begin. Such an interpretation would defeat the purpose of section 288.055's safe harbor. It would further provide a disincentive for the currently unemployed worker (who is capable of being retrained) to seek work, thereby encouraging him to remain idle. Such a reading would thus effect to reward the idle while punishing the ambitious, which is directly contrary to the values the statute seeks to promote.

Further, Mr. Lance's employment with Kelly, which occurred after he was determined to be eligible for the program, did not represent an attempt to abandon the plan of retraining. To the contrary, the reason he took the temporary work with Kelly was because he was committed to following through on the retraining, and the Kelly job would allow him to leave when the retraining classes started. Continuing employment with Kelly would have required that he "terminate his retraining course of instruction," thus frustrating the statutory purpose of section 288.055. *See* § 288.055.6 (expressing the intention that a claimant "shall not be disqualified ... for leaving his most recent temporary work, accepted during the retraining ... if continuing such work would require him to terminate his retraining course of instruction").

In a case where the employee was otherwise eligible for benefits, qualified for and made plans to enter retraining, proceeded to enroll for classes at the first available date in reliance upon the program, and then actually engaged in retraining, it is a perversion of the statutory values to disqualify him for benefits because he left temporary employment to pursue the retraining. *See* § 288.055. We therefore decline to read "during retraining" as encompassing only Mr. Lance's time actively enrolled in classes. His acceptance of temporary employment came just a few days before his formal enrollment in the program, which had already been approved and upon which he was relying. We cannot put formality over substance without undermining statutory purposes. We therefore conclude the decision of the Commission was contrary to the law because section 288.055 prevented Mr. Lance from being disqualified for unemployment benefits. Consequently, we reverse its decision denying benefits to Mr. Lance under section 288.050.

■ Remaining, however, is a question of whether Kelly's account should be

charged for the payment of Mr. Lance's benefits, as opposed to charging only Gray Manufacturing, the other base period employer.[3] Because the Commission found Mr. Lance was disqualified from receiving benefits, the issue of the allocation of charges amongst Mr. Lance's base period employers has not been addressed by the Commission or briefed on appeal. We find *Brown* instructive on this issue. *See* 577 S.W.2d at 94–96. There, the court determined that in the case of concurrent employers, an employee's voluntary relinquishment of one position did not absolutely disqualify the employee from receiving benefits, but that the employer against whom the disqualifying act was committed should not be liable for the payment of those benefits. *Id.* It reversed the absolute benefit disqualification, remanded for reconsideration of the unemployment claims, and directed that those employers whom the employees had left voluntarily without good cause attributable to the work or the employer should be excluded from liability. Kelly's right to object to having its account charged for Mr. Lance's benefits is an issue that is not necessarily dependent on Mr. Lance's eligibility for benefits. Mr. Lance acted responsibly by taking temporary work (being unaware that taking temporary work would jeopardize his eligibility), and Kelly appropriately provided interim work to an individual planning to leave soon to attend school, not anticipating that its account could be charged after Mr. Lance left the work for school. On this record, it is not clear to us why Kelly's account should be charged for any portion of the benefits. On remand, we direct the Commission to determine whether Kelly's account shall be charged in connection with the benefits allowed.

## Conclusion

For the foregoing reasons, we conclude that the Commission erred in determining that Mr. Lance was not eligible for benefits. We reverse the decision of the Commission and remand for further proceedings consistent with this opinion.

SMART and ELLIS, JJ., concur.

---

**3.** Section 288.100.1 provides for benefits to be charged to the accounts of employers who employed an employee during a calendar base period. *See Brown v. Labor & Indus. Relations Commission,* 577 S.W.2d at 94.

The base period is "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." § 288.030.1(2).