

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| LUCIA-CARMA GREER, | ) | No. ED103348 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | Filed: September 6, 2016 |
| Respondent. | ) | |

### OPINION

Lucia-Carma Greer appeals from the Labor and Industrial Relations Commission's decision which found her ineligible to receive unemployment benefits during the period from November 30, 2014 to December 6, 2014—when she was in New York for Air National Guard training—because the Commission concluded that she was therefore not "available for work." Greer contends that the Commission's decision was erroneous because the record shows that throughout the relevant period she remained ready, willing, and able to accept a suitable job and thus *was* "available for work" as that phrase is defined under Missouri law. We agree, and we reverse and remand.

### Factual and Procedural Background

During Master Sergeant Greer's 35-year military career in the United States Air Force, she has served several periods of active duty. Following her most recent period of active duty

(August 18, 2008 – September 29, 2013), she was released from active duty, and due to medical issues she has remained on inactive duty status. As a result, Greer faced an unanticipated period of unemployment while her medical fitness for active duty was determined. Aided by the Air Force's transition assistance program and the Missouri Division of Employment Security, Greer filed her claim for unemployment benefits on September 29, 2014, and began drawing weekly benefits.

As a member of the New York Air National Guard, Greer was required to complete annually 48 units of inactive duty training—which, if distributed evenly throughout the year, equates to about one weekend of training per month—and she had to travel to New York to participate in the training. For the week at issue in this case, Greer had the opportunity to combine three weekends' worth of this mandatory training into one week-long period in New York. This training plan allowed her to save on out-of-pocket travel costs and significantly reduced the amount of potential job-search or work time she may otherwise have lost due to travel.

While in New York, she did not place on hold her pursuit of employment; she engaged in online evening job searches, contacting and submitting applications to over two dozen employers. Greer had good reason to continue her search while at training: her commanding officer indicated in a subsequent letter to the Division's Appeals Tribunal that it was the New York Air National Guard's common practice—and his particular unit's procedure—to allow its members to reschedule their training when necessary for civilian employment purposes, including to act on an offer of employment received while participating in training in New York.

Nevertheless, the Division took the position that Greer's week-long stay in New York made her ineligible for benefits during that week because she was not "available for work." Greer appealed the Division's determination and on April 6, 2015, the Division's Appeals Tribunal

2

issued its decision affirming the determination of ineligibility. On May 5, 2015, Greer appealed the opinion of the Appeals Tribunal to the Commission, and on July 17, 2015, the Commission affirmed because "[s]he was not 'ready' to accept work while she was in New York[—][e]ven assuming that [Greer's] commanders were willing to accommodate [her] needs, the reality was that it would have taken [her] time to seek and gain written approval to leave her service in New York[,] . . . [and] [s]he would have then had to change her existing return flight arrangements and catch a flight from New York to Missouri," which "would have all taken the better part of a day." This appeal follows.

## Standard of Review

We review the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, section 18. This Court may modify, reverse, remand for rehearing, or set aside the decision of the Commission when: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the decision; or (4) there was no sufficient competent evidence in the record to warrant making the decision. *Gardner v. Div. of Emp't. Sec.*, 369 S.W.3d 109, 112 (Mo.App.E.D. 2012) (citing § 288.210[1]). Absent a showing of fraud, we view the factual findings of the Commission as conclusive so long as they are supported by competent and substantial evidence. *Id.* (citing § 288.210). In determining whether competent and substantial evidence was presented—i.e., whether the decision is supported by the overwhelming weight of the evidence as determined by the Commission—we do *not* view *solely* the evidence favorable to the decision and the Commission's inferences drawn therefrom; rather, we objectively review the *entire* record, including any unfavorable evidence or any such inferences

---

[1] All statutory references are to RSMo 2012 unless otherwise indicated.

3

drawn therefrom. *Id.* (citing *Hubbell Mechanical Supply Co. v. Lindley*, 351 S.W.3d 799, 807 (Mo.App.S.D. 2011)). We are not bound by the Commission's conclusions of law or its application of the law to the facts. *Id.*

## Discussion

Section 288.040 provides that a claimant who is unemployed shall be eligible for benefits only if she is able to work and *available for work*.[2] § 288.040.1(2). To be deemed available, a claimant must be actively and earnestly seeking work. *Id.* The claimant also "must be closely attached to the labor market and be ready, willing, and able to accept a suitable job." *Rives v. Labor and Indus. Relations Comm'n*, 592 S.W.2d 252, 253 (Mo.App.E.D. 1979).

Here, the Commission found that Greer was actively and earnestly seeking work throughout the period for which she seeks benefits in this case. However, the Commission deemed Greer ineligible to receive benefits since her participation in Air National Guard training in New York meant that she was not "ready to accept a suitable job" and therefore was not "available for work."

Greer asserts that the Commission incorrectly interpreted the phrase "available for work," but in substance it appears that her argument challenges the Commission's underlying *factual finding* that she was not ready to accept a suitable job while she was in New York participating in Air National Guard training. As stated above, we defer to the Commission's factual findings as conclusive so long as they are supported by substantial and competent evidence from the entire

---

[2] "Available for work" is not defined in the statute because its meaning varies depending on each claimant's circumstances. *Rives v. Labor and Indus. Relations Comm'n*, 592 S.W.2d 252, 253 (Mo.App.E.D. 1979). Invariably, however, the phrase is to be interpreted to promote the explicit purpose of Missouri employment security law, which is to benefit those persons unemployed due to no fault of their own. *See id.*

record. The Commission's decision should not be overturned unless it is contrary to the overwhelming weight of the evidence. *Gardner*, 369 S.W.3d at 113.

Here, however, the Commission's finding is based on a misconstrual of the phrase "ready to accept"—resulting in a misapplication of the law—and is unquestionably contrary to the overwhelming weight of the evidence on the whole record. In finding that Greer, while in New York, was not ready to accept a suitable job, the Commission relied upon the fact that it would have "taken the better part of a day" for her to catch a flight home to St. Louis, Missouri, after obtaining permission to leave her training. But these facts simply do not support the finding that Greer was not at the time ready to *accept* a suitable job.

Viewing the entire record as required by our standard of review, with due deference to the Commission, we are compelled to conclude that Greer was ready, willing, and able to accept— and almost certainly would have accepted—a suitable job offer if she had been offered one while she was in New York. The Commission found that while in New York, Greer engaged in online evening work searches that were "active, earnest, zealous, ardent, sincere, and hearty." There was no evidence that Greer would not have accepted a suitable job if offered one while she was in New York. Greer testified that she would even have been able to show up for work the next day after receiving such an offer, if necessary.

That Greer would not have been present within the state of Missouri at the time of accepting such an offer is immaterial to whether she was "available for work" under § 288.040. No Missouri authority provides that to be ready, willing, and able to accept a suitable job—and thus "available to work" under Missouri employment security law—a claimant of unemployment benefits must be present within the state of Missouri, or even ready to actually *perform* any suitable job the very

moment or day it is offered.[3]  Nevertheless, the Commission adopted this stricter but completely unfounded interpretation of the phrase "available to work," and as a result misapplied Missouri employment security law, reaching a decision contrary to the overwhelming weight of the evidence on the whole record.

The Division and the Commission suggest that by failing to be present in Missouri during the period for which she seeks benefits in this case, Greer was unavailable for work because she imposed an unreasonable restriction on her accessibility to employers, and thus demonstrated the sort of "willingness to merely be employed conditionally [that] does not meet the test of availability." *Wester v. Labor and Indus. Relations Comm'n*, 134 S.W.3d 757, 760 (Mo.App.S.D. 2004).  But Greer did not demonstrate a willingness to be employed only conditionally—she clearly showed her willingness to be employed full-time, without conditions.[4]

---

[3] Indeed, within the relevant context of Missouri employment security law, it would be improper for the phrase "available for work," not defined by statute, to be interpreted so as to make such requirements of claimants of unemployment benefits.  Section 288.020.2 commands that Missouri employment security law "be liberally construed to accomplish its purpose to promote employment security . . . by providing for the payment of compensation to individuals in respect to their unemployment," and a long-standing corollary from Missouri case law, *see, e.g., Lance v. Div. of Emp't Sec.*, 335 S.W.3d 32, 36 (Mo.App.W.D. 2011) (citing *Brown v. Labor & Indus. Relations Comm'n*, 577 S.W.2d 90, 94 (Mo.App. 1978)), provides that under § 288.020.2 we must strictly construe disqualifying provisions.  Accordingly, we cannot, abiding by § 288.020.2, hold that Greer was unavailable for work, since the phrase "available for work" permits the reasonable interpretation (notably, that provided by Missouri case law) that Greer need not have been ready, willing, and able during the relevant period to actually *perform*, but merely, as she was, to *accept* a suitable job—to unequivocally respond "yes" to a suitable offer—to have been "available" here.
[4] To say that Greer placed an unreasonable restriction on her accessibility to employers because she was not, while participating in military training in New York, ready to actually *perform* any suitable job the *very moment or day it was offered*, is itself unreasonable and approaches—or, as the dissenting member of the Commission in this case declared, reaches—"the height of bureaucratic nonsense."  Holding claimants to such a standard would, contrary to the purposes of Missouri employment security law, punish them for finding, and performing their duties in, paid positions that increase their attachment to the labor market, increase their chances of future employment, and reduce their need for unemployment benefits, simply because meeting the demands of such positions—which positions claimants may not be able to afford to abandon, or

6

Moreover, the cases to which the Division cites, and those on which the Commission relied, that have found a claimant unavailable to work because she placed unreasonable restrictions on her employment and thus demonstrated her willingness to be employed only conditionally, are easily distinguished from Greer's case and are inapposite here. In *Golden v. Indus. Comm'n*, 524 S.W.2d 34, 38 (Mo.App. 1975), for example, the claimant was found to have been unavailable to work because he was a full-time student and was available only for jobs that did not conflict with his classroom hours. The claimant did not assert that he would have given up his schooling once offered a job, as Greer testified she would have cut short her training if offered a suitable job. *See id.* ("Claimant expressed no desire, willingness or ability to adjust present class hours or completely forego his educational pursuits if that be necessary and required to gain employment. . . . [W]e cannot say the Commission unreasonably concluded that claimant's primary object was to be a full-time college student who was not available for work because he was not unconditionally, realistically and genuinely seeking attachment to the labor market."). Thus, Greer cannot be said to have demonstrated, as the student in *Golden* did, the willingness to be employed only conditionally; indeed, the record as a whole shows that she demonstrated just the opposite.

Nor is Greer like the claimant in *Blackman v. Indus. Comm'n*, 491 S.W.2d 18, 24 (Mo.App. 1973), who was found to be unavailable for work because she refused six jobs because the salary was too low, and one because a six-day work week was required. There is no evidence that Greer refused a job offered, much less that she did so for a reason that rendered her unavailable to work under Missouri law. Instead, all the evidence in the record indicates that Greer engaged in an

---

may have a duty not to abandon, even after they receive new job offers—may prevent claimants from *immediately* beginning to perform new jobs they are nevertheless ready to accept.

active and sincere pursuit of a suitable job without placing any unreasonable restrictions or conditions on her acceptance of it. Point granted.

## Conclusion

For the reasons stated above, we reverse the Commission's decision and remand for a determination of benefits consistent with this opinion.

_____
James M. Dowd, Presiding Judge

Kurt S. Odenwald, J., and
Gary M. Gaertner, Jr., J., concur.