**Ulysses Curtis SMITH, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 56407.**

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1971.

Legal Aid and Defender Society of Greater Kansas City, for appellant; John J. Cosgrove, Public Defender, Darragh K. Kasakoff, Public Defender, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Ulysses Curtis Smith, was convicted of first-degree robbery in the Circuit Court of Jackson County, Missouri, and his punishment was assessed at imprisonment for a term of eight years. The judgment of conviction was affirmed on direct appeal. State v. Smith, Mo.Sup., 454 S.W.2d 539.

On July 29, 1970, appellant filed a motion to vacate under S.Ct. Rule 27.26, V.A.M.R. The trial court held an evidentiary hearing, with appellant and counsel present, thereafter entered findings of fact and conclusions of law, and denied the motion to vacate. An appeal followed.

Appellant, in his brief, summarizes the evidence adduced at the trial as follows:

"The State's evidence, taken from the transcript on appeal, shows that two young men, one colored, one white, entered a liquor store at 2000 Main Street, Kansas City, Missouri, armed with pistols and robbed the proprietor and patrons of money and property of the value in excess of One Thousand Three Hundred ($1,300.00) Dollars. After the robbery, one of the robbers was seen to walk North on Main Street toward the Elms Hotel.

"Police Officer John Bartlett testified that about 1:30 a. m. he received a report of a holdup at Hummers Bar at 20th and Main Streets. Officer Bill Price was with him. They proceeded to 20th and Main Streets and met Officer Demant. They then went to the Elms Hotel. After receiving information from the hotel manager, they went to Room 12. He testified, 'We heard noises in the room, or shuffling noise. We knocked on the door, no response. There was a key sticking in a lock and we turned the key, pushed the door open, and we saw four men in the room.' These men were arrested and certain articles were taken by the police, to-wit: a pistol, a cigar box containing currency and wrappings for currency.

"Officer William Price testified that when he and Officer Bartlett met Officer Demant, he, Demant, stated that he had received information that suspects fitting the description of the holdup men had entered the Elms Hotel; the manager of the hotel informed them that in Room 12 there was a white male and a colored male registered. His testimony of their entry into the room is substantially the same as Officer Bartlett's.

"State's Exhibit No. 1, a cigar box, State's Exhibit No. 2, a pistol, and State's Exhibit No. 3, an envelope containing five rounds of ammunition were received in evidence."

Appellant first asserts on this appeal that his arrest was illegal, and that the search incident thereto was constitutionally invalid. This Court has held that a claim of illegal search and seizure is not such a matter as may be raised in Missouri under S.Ct. Rule 27.26. State v. Caffey, Mo.Sup., 457 S.W.2d 657; Fields v. State, Mo.Sup., 468 S.W.2d 31.

Appellant next asserts that he was deprived of the effective assistance of counsel because his counsel "filed no motions to quash his arrest or to suppress the evidence seized by the officers after

the arrest." The testimony of appellant's hired trial counsel was the only evidence presented at the evidentiary hearing directed to this contention. He testified, in part, as follows:

"Q In your preliminary examination of this case and preparation possibly for trial, did you become aware of the fact there may or may not have been some physical evidence in this case?

A I knew that they had some money that was taken from the defendant and two or three other people that were found in a hotel room about half a block from the robbery.

Q Was there anything else that you knew about so far as physical evidence was concerned, aside from money?

A I think there was a gun and a cigar box.

Q Were you aware of this prior to the trial?

A Yes, sir.

Q Did you file a motion to suppress the evidence?

A No, I didn't.

Q Had you discussed the manner in which the evidence was obtained with Mr. Smith?

A Yes, sir, I did. As I recall, it was recovered incidental to an arrest. There were four people in this hotel room, and the police officers came there and knocked on the door and identified themselves as police officers. The door was opened, they walked in and all the lights in the room were out and the four occupants of the room— there was money in the room and there was also the weapon in the room. I don't remember exactly where it was, but it was in this one hotel room with all the oc-

cupants, and the defendant was one of those occupants.

Q This was your understanding, at least, prior to trial, is that correct?

A Yes, sir.

Q At trial did some more evidence become known to you concerning the manner of the entry of the police officers into this room?

A No, they testified essentially to what my investigation had revealed, and I think this is about what the defendant and the other witnesses had told me.

Q During the trial do you recall some evidence about a key being left in a door and the police officers having just entered the room?

A I don't remember. I do remember that they didn't have any trouble getting into the room; now whether there was a key in the door or whether the door was left partially open, I don't remember exactly, but I do see here the record says, 'This is a hotel key with a plastic piece with the room number hanging off of it, sticking in the key lock.' Well, I think that's probably what the officer testified.

Q At any rate, at no time did you ever file a motion to suppress the evidence on the grounds of an illegal arrest, is that correct?

A No, sir.

Q You never filed a motion to suppress the arrest either, did you?
A No, sir."

The trial court entered detailed findings of fact on the issue of "ineffective" assistance of counsel and, *most importantly,* concluded that appellant's "constitutional rights to a fair trial were not denied or abrogated." We agree.

In United States ex rel. Lawrence v. Woods, 7 Cir., 432 F.2d 1072, 1076 (Oct.

19, 1970; cert. denied May 17, 1971, with Mr. Justice Douglas of the opinion that certiorari should be granted, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148), the United States Court of Appeals for the Seventh Circuit held that "decisions of lower federal courts are not conclusive on state courts." However, we believe the following language from Robinson v. United States, 8 Cir., 448 F.2d 1255 (1971), is particularly appropriate and persuasive in this case:

"Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel. [Citing cases.] In order to assert a Sixth Amendment infirmity on this ground, the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client. There must be such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant."

The judgment is affirmed.

All of the Judges concur.