**Malcolm JACKSON, Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 58291.**

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1974.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Oct. 14, 1974.

Fred A. Eppenberger, Lawrence P. Katzenstein, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Malcolm Jackson has appealed from an order refusing to set aside a verdict and judgment finding him guilty of first degree murder, following an evidentiary hearing on his Rule 27.26, V.A.M.R., motion to vacate. This Court has jurisdiction under its en banc order entered April 9, 1973 relating to pending cases involving first degree murder.

On the original appeal the judgment of conviction was affirmed. State v. Jackson, 412 S.W.2d 428 (Mo.1967). Point II on the original appeal assigned as error that the court from the bench during voir dire examination made prejudicial remarks to the panel. The remarks were made at the conclusion of an extensive voir dire examination. The only reference in the transcript to these remarks follows: "(Reporter's note: At this point Judge McFarland made a statement to the jurors regarding the need for more jurors, which statement was not reported by the official Court Reporter.)" Out of the hearing of the panel trial counsel for appellant promptly commented that the court's statement to the panel was "wellfounded" but he asked for a mistrial on the basis that one statement was highly prejudicial, "when the Court said you were talking about civil jurors or civil juries and that 'God forbid' they would be in a criminal case."

Whether the remarks were prejudicial was not decided on the original appeal, this Court deeming it impossible to judge the effect of the remarks since neither the remarks themselves nor the context in which they were spoken were reported, and because the only reference in the transcript to the nature of the remarks (that contained in counsel's request for a mistrial) was fragmentary and ununderstandable.

On this 27.26 appeal the principal point is that appellant has been denied funda-mental constitutional and statutory rights to full appellate review and hence due process of law by being deprived of a full and complete transcript. Citing statutes, decisions, rules and canons of judicial ethics, he asserts his guaranteed right to a complete transcript; claims no adequate substitute for a full transcript is available; objects that the question of prejudicial error cannot be adjudicated because the exact language used by the trial court is irrecoverable; denies that proof of the prejudicial effect of the remarks is required of him "because such proof is inherently impossible," and concludes that as a consequence he is entitled to have the conviction set aside and a new trial ordered.

A losing party is entitled to appellate review based upon a full, fair and complete transcript on appeal. The ultimate responsibility for the preparation and filing of a transcript on appeal, however, is upon appellant under Rule 81.12(a). Having the burden of demonstrating error it is his obligation to prepare and file a transcript which incorporates the proceedings showing that the trial court erred. That obligation is not discharged by the simple expedient of ordering the official court reporter to prepare a transcript and then filing whatever is prepared. If the transcript prepared is defective or omits material matters it is appellant's duty to take steps to supply the omission or cure the defect. Appellants are required to exercise due diligence in this regard, and an appellant will not be granted a new trial on account of the absence of a transcript (or failure to file a full and complete transcript) if guilty of laches or negligence, or if appellant fails to establish prejudice as a result of inability to present a complete record. Lawton-Byrne-Bruner Ins. A. Co. v. Air-Flight Cab Co., 479 S.W.2d 218 (Mo.App.1972), and nine cases cited on page 220. The procedure is prescribed by Rule 81.12(c): "If anything material to either party is omitted from the transcript by error or accident or is inadvertently misstated therein, the parties by stipulation,

or the trial court, before the transcript is filed in the appellate court, or the appellate court thereafter, on a proper suggestion or of its own initiative, shall direct that the omission or misstatement shall be corrected * * *. The appellate court may, if it seems necessary, order that a supplemental transcript on appeal shall be prepared and filed by either party or by the clerk of the trial court including any additional part of the record, proceedings and evidence, * * *." Where no record of the proceedings complained of is furnished there is nothing for the appellate court to decide. Garrett v. State, 486 S.W.2d 272, 274 [4] (Mo.1972); State v. Paige, 446 S.W.2d 798, 806 [16] (Mo.1969); Edwards v. Hrebec, 414 S.W.2d 361, 366 [8] (Mo. App.1967). That is what this Court, in effect, held on Point II on the original appeal. State v. Jackson, supra, 412 S.W.2d l.c. 433 [3].

If appellant on the original appeal, or on this appeal, desired review of the propriety of the trial judge's remarks from the bench it was incumbent upon him through his counsel to ascertain from the trial judge whether he had a copy of the remarks and if not, whether the judge would prepare a substitute containing the substance of his remarks. Failing in this, the content of the judge's remarks likely could have been agreed to and reduced to writing by counsel conferring with prosecuting officials, the court reporter, deputy clerks, the panel, or bystanders who had occasion to hear and remember what the judge said on this occasion. If the judge made the same statement to all jury panels the members of other panels and other defense counsel could have been consulted in an effort to reproduce the statement and supply the omission. No attempt, however, was made to supply the missing portion of the transcript. Appellant should not be permitted to decide for himself that a sufficient transcript could not be prepared, "without making any effort in conjunction with the other side, or consultation with the trial judge, to ascertain whether or not" a transcript could be made, and having made no effort in this direction, is not justified in asking for reversal of the judgment of conviction and a new trial. Stevens v. Chapin, 206 Mo.App. 594, 227 S.W. 874, 875, 876 (1921). The opinion went on to say: "Appellant is not asking for something to which he is entitled as a matter of strict, absolute, legal right but for that which the court, in the exercise of inherent extraordinary powers, will grant to prevent a possible injustice being done to one who is himself wholly without fault or blame. In every case which we have examined, this freedom from fault or blame on the part of one seeking such relief is a necessary prerequisite to the granting of the relief sought. [Citing cases.]"

■ Accordingly, we reject appellant's unsubstantiated assertion that no adequate substitute for a full transcript is available; that the exact language used by the court is irrecoverable, and that proof of the prejudicial effect of the remarks is inherently impossible. From what appears it is more than likely that diligent counsel could have reconstructed the judge's plea for cooperation in obtaining additional prospective jurors, and by working in conjunction with counsel for the state could have secured a stipulation or a court order or a supplemental transcript under Rule 81.-12(c) supplying either the exact words used or their gist and substance, so that an intelligent judgment could have been reached on the question whether the judge's remarks were prejudicial. On the record presented this issue must be determined "on the basis of whether, under the evidence offered, the defendant [has] sustained his burden of showing he is entitled to relief under Rule 27.26," State v. Keeble, 427 S.W.2d 404, 409 (Mo.1968). Clearly appellant has not sustained that burden.

Appellant's second and last point is that the court erred in denying the motion to vacate the sentence and judgment because at the original trial appellant was denied his right to effective assistance of counsel. This point is based upon a charge that ap-

pellant's counsel tried the case without an attempt to create a favorable attitude on the part of the jury toward his client and by demonstrating his hostility to the jury. When counsel for defendant commenced his inquiry of the panel on voir dire examination he stated that he did not particularly care what any of the panel thought of him, because he did not particularly care about them at that time; that when he took his oath as a lawyer he said he was not going to try cases on a popularity basis, but as a lawyer. Appellant says this created "an unfortunate impression of defendant's counsel." Complaint is made of "probably 50 instances of acrimonious exchanges most of which took place in the hearing of the jury and some of which took place at the bench and in the presence of the jury"; bickering between counsel and with the court—"a deliberate course of conduct having the effect of prejudicing the jurors against the defendant and obscuring their minds to the real issue at hand—whether the defendant did in fact commit the crime as alleged"; and of "the antics of counsel," which prevented him from having a fair trial.

■ Appellant did not introduce in evidence the transcript of the original trial but, taking judicial notice of our records, we have read therein the objections and requests for action made by appellant's counsel, the court's rulings and the exchanges and colloquies between court and counsel, from which we conclude that the trial court's finding that this assignment is without merit is not clearly erroneous. Counsel's remarks at the outset of the voir dire examination may have been unfortunate, but from them we do not necessarily conclude that appellant lost the favor of the jury or that their proper consideration of his defense was thereby prejudiced. An equally permissible inference is that *the lawyer* lost caste and that appellant gained the sympathy of the jury for having to be defended by a churlish lawyer. For all we know counsel may have adopted these tactics as a matter of trial strategy. It is

true that counsel made an unusually large number of objections during the trial, many of which were without merit and some of which bordered on the cantankerous. On the other hand, many times he was sustained in his objections and requests. He prepared the jury for the ordeal of sitting through a trial punctuated by numerous objections, by asking on voir dire whether the fact that he was going to be up and down in his chair "a lot of times (making objections) trying to protect the rights of this young man here, would prejudice" the jury against either defendant or the lawyer. While counsel for appellant was admonished by the trial judge on several occasions, admonishing counsel is a matter resting within the sound discretion of the court, State v. Barron, 465 S.W.2d 523 (Mo.1971), 49 A.L.R.3d 1176, and on this review we do not find that the court abused its discretion in this regard. Counsel vigorously and strenuously defended appellant, and while his professional conduct at times was uncommonly aggressive if not brash, it may not be said that appellant was deprived of a fair trial by the conduct of counsel, or that the circumstances amount to the lawyer's "deliberate abdication of his ethical duty to his client," see Smith v. State, 473 S.W.2d 719, 722 (Mo.1971), or that the trial was thereby subverted. That neither appellant nor appellant's family, who hired this lawyer, considered that counsel's conduct at the trial was improper or prejudicial and did not lose faith in him as a lawyer is attested by the fact that they permitted him to continue in the case and prosecute the original appeal to this Court.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.