**Angelika SAKAGUCHI, Appellant,**

v.

**MISSOURI DEPARTMENT OF CORRECTIONS and Division of Employment Security, Respondents.**

**No. WD 71997.**

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Mikah K. Thompson, Kansas City, MO, for appellant.

Shelly A. Kintzel and Matthew Briesacher, Jefferson City, MO, for respondents.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, GARY D. WITT, Judge and HADLEY GRIMM, Special Judge.

GARY D. WITT, Judge.

Angelika Sakaguchi ("Sakaguchi") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying her unemployment benefits. For the reasons set forth herein, we reverse.

## I. Factual Background

Claimant, Angelika Sakaguchi ("Sakaguchi"), worked for the Missouri Department of Corrections ("Employer") as a Human Relations Officer for two years until her employment was terminated on April 22, 2009.

Sakaguchi's job responsibilities included the recruitment of personnel for her Employer in the western region of the State of Missouri, which required her to travel throughout the region. Sakaguchi was given a letter on April 22, 2009, detailing the reasons for her dismissal and giving her a chance to appeal. The letter stated the reason for her dismissal was her "continued and blatant insubordination and unprofessional behavior." The specific actions cited in the letter include the following: refusal to work with the Division of Adult Institutions Recruitment Team after being instructed to do so; failure to complete tasks in a timely fashion; failure to contact businesses in the region after being instructed to do so; failure to meet with CAOs in the western region and provide details of those meetings; failure to contact Career Centers in her region; incurring overtime after being told not to do so without prior approval; failure to relocate her office from St. Joseph to a location in Cameron after being instructed repeatedly to do so; failure to check in with the control center in Cameron when arriving to and leaving her office.

Sakaguchi applied for unemployment benefits on April 23, 2009, which was denied by the Missouri Division of Employment Security ("Division") on May 22, 2009. Sakaguchi appealed this decision on June 1, 2009, and the Appeals Tribunal ("Tribunal") affirmed the Division's determination in an order dated September 22, 2009. Sakaguchi then appealed the Tribunal's decision on October 5, 2009, to the Labor and Industrial Relations Commission ("Commission"), which affirmed and adopted the decision of the Tribunal in

full.[1] Of the multiple allegations of misconduct alleged by the Employer, the only allegation for which the Commission found evidentiary support was the allegation that Sakaguchi failed to move her office from St. Joseph and work from the new Cameron location.

The facts as found by the Commission with respect to Sakaguchi's failure to relocate her office to Cameron are as follows. On December 11, 2008, Sakaguchi was instructed by the director of human resources, her acting supervisor, and the Division director, to relocate her office from St. Joseph, Missouri, to Cameron, Missouri, due to business needs of her Employer. Sakaguchi did not comply immediately but instead appealed the directive to the Division director as she was authorized to do pursuant to Employer's policies. The director denied the appeal on December 23, 2008, and instructed Sakaguchi to relocate.

Sakaguchi did not immediately relocate but on January 20, 2009, met with the director of human resources to express her concern about her office at the Cameron location, which was located in a trailer and did not provide the privacy necessary for some of her duties. Apparently, the director agreed, because in response, a new office in Cameron was found for Sakaguchi. That office had to be renovated before she could occupy it, so Sakaguchi was instructed to relocate to the trailer until the alternative space was made ready. Sakaguchi expressed concern over having to move her office twice, so the director told her she could leave the furniture in the St. Joseph location but that all the "soft" supplies, referring to items easily transportable, had to be immediately relocated to the Cameron trailer location.

Sakaguchi admitted that she did not move all the soft supplies, claiming she did not have the room necessary for them and all of them were not yet needed at the Cameron location.

Sakaguchi admitted that she would work out of the St. Joseph office on occasion when it was convenient and efficient. On March 20, 2009, Sakaguchi's supervisor found her working at the St. Joseph location and observed books, office supplies, and brochures still present in the office. At this time the renovations of the Cameron office were still not competed. Sakaguchi was terminated shortly thereafter.

Based on these facts, the Commission determined that Sakaguchi was disqualified from receiving unemployment benefits because she was discharged for misconduct connected with her work. Sakaguchi now appeals.

## II. Standard of Review

 Section 288.210 sets this courts standard of review for appeals from final awards of the Commission. That section provides that

The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

---

1. Commissioner Hickey wrote a dissenting opinion finding there was no showing of misconduct.

Section 288.210; *Weirich v. Div. of Emp't Sec.*, 301 S.W.3d 571, 574 (Mo.App. W.D. 2009). "In the absence of fraud, the Commission's factual findings are conclusive and binding on this Court if supported by competent and substantial evidence." *Ragan v. Fulton State Hosp. & Div. of Emp't Sec.*, 188 S.W.3d 473, 474 (Mo.App. E.D. 2006) (citing Section 288.210). "Our function is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Id.* (quoting *Shields v. Proctor & Gamble Paper Prods. Co.*, 164 S.W.3d 540, 543 (Mo.App. E.D.2005)). Whether the employee's conduct qualifies as misconduct connected with work is a determination of law, which this court reviews independently. *White v. St. Louis Teacher's Union*, 217 S.W.3d 382, 388 (Mo. App. W.D.2007); *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 198 (Mo.App. W.D.2007). "On matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations." *Ayers*, 211 S.W.3d at 198 (citing *Willcut v. Div. of Emp't Sec.*, 193 S.W.3d 410, 412 (Mo.App. E.D.2006)).

### III. Analysis

■ In her sole Point on Appeal, Sakaguchi argues the Commission erred in denying her unemployment benefits because her Employer failed to show that she committed misconduct in connection with her work because the alleged conduct was not a deliberate refusal to comply with her Employer's directive to move her office to Cameron but, rather, poor workmanship, lack of judgment, or an inability to do the job, which does not constitute misconduct calling for the withholding of unemployment benefits.

■ Section 288.050.2 provides that a claimant who has been discharged for "misconduct" connected with the claimant's work is disqualified from receiving unemployment benefits. "Misconduct" is defined by statute as

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer;

Section 288.030.1(23). " '[W]hen the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work' " by a preponderance of the evidence. *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo. App. W.D.2005) (quoting *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 664 (Mo.App. W.D.2003)). "This court has found that each of the criteria for finding misconduct has an element of culpability or intent." *Bostic v. Spherion Atl. Workforce*, 216 S.W.3d 723, 725 (Mo.App. W.D. 2007) (citing *Dixon v. Div. of Emp't Sec.*, 106 S.W.3d 536, 541 (Mo.App. W.D.2003)).

■ The Commission found that Sakaguchi's failure to relocate her office was insubordination and that her behavior constituted "misconduct connected with work, as it demonstrate[d] a disregard for a standard of behavior that the employer had the right to expect of the claimant." Sakaguchi claims that the facts as found by the Commission show that she did not possess the requisite deliberate intent to refuse to comply with instructions.

"Willful misconduct is established when action or inaction by the claimant amounts to conscious disregard of the

interests of the employer or constitutes behavior contrary to that which an employer has a right to expect from an employee." *Dixon [v. Div. of Emp't Sec.,]* 106 S.W.3d 536, 542 (Mo.App. W.D.2003)(quoting *Hurlbut v. Labor & Industrial Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App.1988)). "The context of the term 'disregard' in the definition of misconduct indicates ... that disregard of the standards of behavior means 'an intentional slight.'" *Dixon,* 106 S.W.3d at 541.

*Dixon v. Stoam Indus., Inc.,* 216 S.W.3d 688, 693 (Mo.App. S.D.2007). "[A]n employee's refusal to comply with a lawful and reasonable directive from a supervisor constitutes misconduct as that term is defined by § 288.030.1(24)." *Id.* Sakaguchi does not contest the reasonableness or lawfulness of her directive to move, but she argues that she did comply with what she believed were her Employer's demands and, if she was in fact not in compliance, that her failure to do so was not out of a conscious disregard for the Employer's directive.

The record is bereft of evidence that Sakaguchi *deliberately* disregarded the directives of her Employer. The fact that Sakaguchi was opposed to the move and went through appropriate channels to appeal the decision in no way counts against her in determining whether she complied with her Employer's directives. The Commission relied solely on Sakaguchi's alleged refusal to relocate to the Cameron location as the basis of its finding of misconduct. The Commission's classification of the directives of her Employer as being "clear" is not substantiated by the record. The record shows that Sakaguchi was instructed to move to a temporary office, a trailer in Cameron, until her permanent office was ready in March 2009. After she voiced discontent with the move, Sakaguchi's Employer told her to move her "soft supplies" to the new Cameron trailer location but that her furniture could remain in St. Joseph so it would not have to be moved twice. The record shows that Sakaguchi did in fact move the "soft supplies" she needed to operate out of the St. Joseph location and left the remaining materials until the final move to the permanent Cameron location. Sakaguchi testified that she believed she was complying with the Employer's directives, and the Commission did not find Sakaguchi's testimony to lack credibility. The Employer insists that Sakaguchi was instructed to move all her "soft supplies" to the trailer location, and the Commission classified her failure to move all the supplies as "insubordination." "'Insubordination' means a willful disregard of express or implied direction or a defiant attitude and 'rebellious', 'mutinous', and 'disobedient' are often used as definitions or synonyms of 'insubordinate.'" *McClellon v. Gage,* 770 S.W.2d 466, 469 (Mo.App. S.D.1989) (citing *Shockley v. Bd. of Educ.,* 149 A.2d 331, 333–34 (De.Super.Ct.1959)). We fail to see how Sakaguchi's failure to remove surplus materials to the trailer location while other items were allowed to be left until the final move constitutes a willful violation of the directives of her Employer of sufficient seriousness to qualify as "misconduct." At most, if the directive was in fact clear, this reveals poor judgment, which may be sufficient for her termination but is not sufficient to establish misconduct so as to deny unemployment benefits.

■■■ The record shows that Sakaguchi was instructed multiple times that her new office was to be in Cameron. However, the record also shows that Sakaguchi did in fact begin operating out of Cameron and that her job required travel throughout the State. Sakaguchi testified that the reason she was occasionally working out of the St. Joseph office after she was instructed to

relocate offices was because it was merely convenient to save time between meetings in St. Joseph. There is no evidence in the record that Sakaguchi was instructed *never* to return to the office in St. Joseph. The record shows that Sakaguchi believed that during this transition time it was permissible to work out of both the Cameron office and the former St. Joseph office on occasion. "To willfully disregard an employer's interests, an employee has to be aware of and knowingly or consciously violate an employer's rule." *Williams v. Enter. Rent–A–Car Shared Servs., LLC*, 297 S.W.3d 139, 142 (Mo.App. E.D.2009) (citing *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007)) ("Willful is defined as '[p]roceeding from a conscious motion of the will; voluntary; knowingly, deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.'" Black's Law Dictionary 1599 (6th ed.1990)). There is no such showing here. We cannot say her occasional return to the St. Joseph office when it was convenient or efficient manifests the willful disregard of her Employer's directives necessary to support a finding of "misconduct."

A thorough review of the record shows that Sakaguchi's Employer had many problems with her work performance. However,

"[i]t is essential to keep in mind that whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Miller [v. Kansas City Station Corp.]*, 996 S.W.2d [120] at 124 [ (Mo.App. W.D. 1999) ]. "There is a vast distinction between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him or her for unemployment compensation benefits." *Hoover*, 153 S.W.3d at 13 (internal quotations omitted). *Buckley v. Safelite Fulfillment, Inc.*, 299 S.W.3d 757, 761 (Mo.App. S.D.2009). The sole reason relied upon by the Commission to deny Sakaguchi unemployment benefits was her alleged refusal to move her work location from St. Joseph to Cameron. The record, however, does not support a finding that Sakaguchi demonstrated a willful disregard for the directives of her Employer, the *sine qua non* of misconduct. At most, Sakaguchi may have demonstrated poor judgment, but that alone is not sufficient for the denial of unemployment benefits based on "misconduct."

## IV. Conclusion

For the foregoing reasons, we conclude that the Employer failed to meet its burden of establishing that the employee was discharged for misconduct. The award of the Commission is reversed and the cause remanded to the Commission.

All concur.