**HUBBELL MECHANICAL SUPPLY CO., Appellant,**

v.

**James A. LINDLEY, and Division of Employment Security, Respondents.**

**No. SD 30994.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 20, 2011.

Motion for Rehearing Denied Oct. 11, 2011.

Application for Transfer Denied Dec. 6, 2011.

800

Paul W. King, Esq., Springfield, for Appellant.

Jacqueline A. Bryant and Ninion. S. Riley, Jefferson City, for Respondent, Division of Employment Security.

ROBERT S. BARNEY, Judge.

Appellant Hubbell Mechanical Supply, Co. ("Employer") appeals from the Labor and Industrial Relations Commission's ("the Commission") "Decision of Commission" which found that Respondent James A. Lindley ("Claimant") was not disqualified from receiving "benefits as a result of the work separation of May 15, 2009, because [Claimant] was discharged by [Employer] on that date, but not for misconduct connected with work." Appellant asserts four points of error against Claimant and Respondent Division of Employment Security ("the Division") (collectively "Respondents"). We affirm the decision of the Commission.

The record reveals Claimant had been employed as a sales representative for Employer for approximately two and a half years and he was discharged by Employer's corporate president, Declan Hubbell ("Mr. Hubbell"), on May 15, 2009, for purportedly faxing an inaccurate quote to a customer as well as for failing to follow instructions. Claimant filed his claim for unemployment compensation benefits on May 31, 2009. Initially, a deputy for the Division determined Claimant was disqualified from receiving unemployment benefits because he was discharged from his position with Employer "FOR MISCONDUCT CONNECTED WITH WORK."

Claimant appealed that decision to the Appeals Tribunal. A hearing was held on October 9, 2009, at which Claimant and Andrew Wilson testified on Claimant's behalf and Mr. Hubbell testified on Employer's behalf. Following the presentation of evidence, the Appeals Tribunal issued its "DECISION" on October 27, 2009, in which it found credible Claimant's assertion that he was "told that his employment was being terminated due to lack of work;" however, it also found that Claimant "did disregard the instruction of [Mr. Hubble] not to send the quote," which was a violation of Employer's rules of conduct. Specifically, the Appeals Tribunal determined that Claimant

sent to a customer a quote which he had been ordered by [Mr. Hubbell] not to send because it was not correct. This action violated [Employer]'s rules of conduct as they relate to insubordination. [Claimant]'s failure to follow the

orders of [Mr. Hubbell] demonstrated a substantial disregard for the interest of [Employer], the standards of behavior established by [Employer], and the duties and obligations [Claimant] owed [Employer]. Therefore, [Claimant] did commit misconduct resulting with the termination of his employment.

Accordingly, the Appeals Tribunal found Claimant was "disqualified for benefits . . . ."

Claimant appealed the decision of the Appeals Tribunal to the Commission. The Commission issued its "ORDER OF COMMISSION" on February 24, 2010, in which it found it was necessary to "REMAND" this matter to the Division. The Commission found:

> [t]he transcript from the October 9, 2009[,] hearing is replete with 'unintelligible' portions. In addition, the transcriptionist has indicated throughout the transcript: 'Apparently machine malfunctioned—portion of testimony inaudible.' A review of the original audio recording of this hearing reveals that significant portions of the parties' testimony has indeed been left out of the record due to apparent malfunction of the recording equipment.[1] Due to the poor quality of the audio recording, the Commission does not have an adequate record upon which to base a decision. See *Bayne v. Our Little Haven,* 109 S.W.3d 230, 231 (Mo.App.2003). The proper way to cure this defect is to remand the matter to the Division for a new evidentiary hearing. *Id.*

As a result of this deficiency with the transcript from the initial hearing in this matter, the Commission specifically "set[ ]

aside" the decision of the Appeals Tribunal and "remand[ed] this matter to the Division with directions to conduct a new hearing, after adequate notice to all parties." It directed that after a "new hearing" was held, "[t]he Appeals Tribunal shall then issue a new decision based upon the new record created in accordance with this order of remand."

The matter was remanded to the Appeals Tribunal and a second hearing was held on June 1, 2010. At the beginning of this hearing counsel for Employer offered into evidence "the entire transcript and the exhibits from the prior [October 9, 2009,] hearing so [they would not] have to rehash . . . those parts that are clear in the record." Employer also filed a motion requesting to supplement and/or correct the transcript from the first hearing. The following colloquy then occurred:

> THE REFEREE: As to the transcript, I've not given any directive as to include a transcript of a previous hearing into evidence for a subsequent one. What would be the basis for that?
>
> COUNSEL FOR EMPLOYER: Well, I . . . think this hearing should supplement the record where . . . they found that the . . . typist put down in several places that she couldn't hear. She couldn't understand the tape, but the . . . vast majority of the hearing was . . . clear, and we . . . went through a hearing, that seemed like it was three or four hours long on October 9, and I would hope we wouldn't have to rehash all that . . . in the record. [T]here's exhibits there and testimony. And . . . I wanted to file along with my request to take the transcript a motion to correct the tran-

---

1. Both parties acknowledge in their briefs that the initial hearing transcript contains 70 "(unintelligible)" references which occurred mainly during the testimony of Employer's witness and during the cross-examination of Employer by Claimant's counsel and that there are also at least five notations in the transcript regarding the machine malfunctioning and portions of the testimony being "inaudible."

script, which I've gone through and listened to the tape, and ... the vast majority of the places where the typist said she couldn't hear, she couldn't understand what was said, is pretty clear, I think. I haven't heard [Claimant's counsel's] response to this motion yet. I did ... fax him a copy of it the other day....

So, ... I would propose that we take the transcript in evidence with this motion to correct the record and let [Claimant's counsel] have a week or ten days to respond to it and to see if he agreed with what I hear on the tape or not because I think ... I've been able to tell what was said because I was at the hearing. I—and I've made an affidavit with this motion to correct the record.

. . . .

COUNSEL FOR CLAIMANT: The way I read the remand, it stated that there was to be a new hearing, and I ... think it would be inappropriate to just ... admit a corrected transcript because we had asked, for several reasons, one is that ... there's ... that the direction for the new hearing ... would indicate that ... new evidence would be heard, ... that it would ... be a ... new hearing, and the ... other is that because we asked for an in-person hearing, reading the whole transcript doesn't give the ... inflexion and the information that the Hearing Officer would ... necessarily need for a new hearing. I think it certainly could be used for impeachment if there's a proper foundation for prior inconsistent statements or something to that effect, but as far as being more convenient, we don't want to wait another week or ten days for a hearing, and ... we'd like to proceed today, according to the direction ... what we understand the remand to be.

THE REFEREE: Is there any impeachment or prior inconsistent statement purposes for the transcript?

COUNSEL FOR EMPLOYER: Well, ... there may be, depending on what ... is presented in evidence here today, but ... the vast majority of it is [Claimant's counsel] states he doesn't want to wait a week or ten days. [T]here's no way we can get through this hearing today, in my opinion, between now and 5 o'clock, unless we do accept the transcript, and ... my ... proposal is to accept the transcript and let either side supplement it and use [it] in any way they want to at this hearing.

THE REFEREE: I don't see the word supplement in here in the [Commission's] Order, as far as supplementing the record, appears to have remanded ... for a new hearing, a new record.

COUNSEL FOR EMPLOYER: Well, I think it's kind of like a court-tried case ... for instance ... like when you have an injunction case, for instance. When I've had injunction cases in certain court[s], you had a hearing on a temporary injunction and you come down to the hearing on the permanent injunction. In the cases where I've been involved, ... they've always taken in the transcript from the earlier proceedings as a part of the record so that you didn't have to rehash it all, and ... I don't think there's anything inconsistent with that in the Remand Order. The Remand Order says to make a clear record, a complete record, and the best way to make a complete record would be to supplement those areas where the transcript is deficient ... and ... let anybody raise any point that they want to challenge ... what we're trying to do is get to the facts, and to the extent that we've already covered those facts, we shouldn't have to cover them again.

. . . .

COUNSEL FOR CLAIMANT: [F]or the reasons already stated, that it ... deprives the fact-finder of ... the matter and ... the timing, and ... the reason they have in-person hearings ... and also, it injects the question of what the lawyers think was said and ... what was omitted at that hearing, and ... that's just going to cause ... I cannot see how that would create less confusion.

The Referee then found that it was going to take into evidence "the Division exhibit packet, and because this is all attached together, [he] will mark this whole attached transcript and exhibit ..." as Division Exhibit 1. The Referee then stated that it

> will admit the Division record packet after we go through the documents here. As far as the transcript itself, I've not been given authorization to admit the entire transcript, and I'll sustain the objection as far as the transcript goes. Now, on appeal, if you want to argue before the [Commission] or Court of Appeals that the transcript should be considered, you can do that, and there'll be a copy of that for them to review. But for today's hearing, I think, consistent with [the Commission's] decision to remand, I'll have to sustain the objection as far as the transcript itself, and then we'll take evidence today as to the ... merits of the case ... and if you have items in the transcript you want to use for purposes of ... impeaching a witness, we'll take that into consideration when we get to that point in the hearing. . . .

Counsel for Employer then again "offer[ed] on the record ... the full transcript and the exhibits ..." and then referenced the recently filed motion to correct the transcript. The Referee de-nied Employer's request to admit the transcript into evidence, but maintained its previous ruling that the transcript would be part of Exhibit 1 for purposes of future appeals.

At the hearing, Employer introduced evidence that its employee policy manual prohibits "[i]nsubordination or other disrespectful conduct" as well as "[g]ross insubordination" which it defined as "a willful and deliberate refusal to follow reasonable orders given by a member of management" and that Claimant had received a copy of the manual when he was hired. According to Employer, the incident which led to Claimant's discharge involved a quote for copper tubing that Claimant was asked to submit to a customer, Gold Mechanical, by Mr. Hubbell. Mr. Hubbell requested that Claimant submit a quote "for various copper sizes to ..." the customer and Claimant apparently prepared a quote for "only one size" of copper pipe. Mr. Hubbell testified that he directed Claimant to re-do the quote to show multiple sizes of pipe, but Claimant nevertheless faxed the single size quote to the customer. Mr. Hubbell related that when he asked Claimant why he did not fax the quote as asked "he said that it didn't need to be done that way, and he became very, very angry with [Mr. Hubbell]. . . ." Mr. Hubbell relayed the incident to his father, Jack Hubbell, the corporate vice-president, and his father recommended that Claimant be discharged "because this is a pattern and a continuation, and [he] finally came to the conclusion that [Claimant's] not going to adhere to [Employer's] policies and procedures." There was also evidence that Claimant had prior instances of failing to comply with Employer's policy manual including an instance where he failed to perform on a certain account "and ask[ed] to have it removed from his call list;" an incident in which he received an official reprimand from Employer "for the way he

handled a [quote] ...;" and an occasion when he was warned for "[i]nsubordination" and "[r]udeness to Employees/Customers."

Claimant admitted he had received several written and oral warnings in the past from Employer. He related that on the day he was terminated Mr. Hubbell told him that he was "laid off."[2] Claimant testified that he then told his fellow employee that "[he] got laid off" although he later told the same employee he "had been invited not to return" and that he believed he "got [his] ass fired." While Claimant acknowledged sending quotes to Gold Mechanical on several prior occasions, he specifically denied sending the inaccurate fax to Gold Mechanical on the occasion at issue. Claimant variously related that he did "not remember faxing a quote ...;" that "it would not be a—a fax I would have sent out;" and that "if I have to tell you under oath whether I did or did not, I will say I did not."

On June 8, 2010, the Appeals Tribunal issued its "DECISION OF THE APPEALS TRIBUNAL" in which it held the opposite of its previous decision. The Appeals Tribunal found the following facts:

> [Mr. Hubbell] discharged [Claimant] for alleged insubordination. [Mr. Hubbell] instructed [Claimant] that another employee should work on a sale. [Claimant] became angry with [Mr. Hubbell] and disagreed with [him] because [Claimant] believed that time was of the essence for the sale. [Claimant] followed [Mr. Hubbell's] instructions and allowed another employee to work on the sale.
>
> [Mr. Hubbell] also instructed [Claimant] not to fax a quote to a different customer. [Mr. Hubbell] later found a quote that he believed was faxed to the cus-

tomer by [Claimant]. The Appeals Tribunal finds credible [Claimant]'s testimony that he did not fax the quote to the customer. [Mr. Hubbell's] testimony that [Claimant] faxed the quote to the customer is not credible because that testimony was contrary to [Claimant]'s first-hand testimony that he did not fax the quote.

> ....

> [Claimant]'s testimony rebutted [Employer]'s evidence and established that [Claimant] was not insubordinate with [Employer]. [Claimant]'s disagreement with [Mr. Hubbell] about handling a sales account shows a lack of judgment, but not a willful violation of [Employer]'s rules or standards. The evidence shows that [Claimant] did not fax a quote to a customer in violation of the president's instructions. Therefore, the Appeals Tribunal concludes that [Claimant] was discharged on May 15, 2009, but not for misconduct connected with his work.

As such, the Appeals Tribunal ruled Claimant was not disqualified from receiving unemployment benefits. This decision was appealed by Employer to the Commission.

The Commission reviewed the evidence and transcript presented to the Appeals Tribunal and issued its "DECISION OF COMMISSION" on November 2, 2010, in which "except as otherwise pointed out herein ..." it adopted the Findings of Facts and Conclusions of Law of the Appeals Tribunal dated June 8, 2010. The Commission also agreed with the Appeals Tribunal's denial of Employer's attempt to supplement and/or correct the transcript from the original hearing and stated that:

> our remand order was not intended to result in a 'supplemental' hearing with a

---

2. Employer denied Claimant was told that he was laid off.

chance for the parties to offer 'supplementary' evidence. To the contrary, our order instructed the Appeals Tribunal to conduct a '*new* hearing' and issue a '*new* decision' based on the '*new* record.' The reason for our order was because the transcript of the original hearing ... was so rife with transcription errors that it precluded any meaningful review. Employer's offer of a 'corrected transcript' ignores the process contemplated by our remand order. We remanded for a new hearing, and [Employer] was offered a full and fair opportunity to present its case at the new hearing. The decision of the [R]eferee to follow our remand order and exclude the transcript of the earlier hearing cannot be compared with the conduct of the referee in [*Weinbaum v. Chick*, 223 S.W.3d 911, 914 (Mo.App.2007),] where a party was deprived of the opportunity to present a live witness with potentially relevant testimony.

Accordingly, the Commission agreed with the Appeals Tribunal and found Claimant was not disqualified from receiving benefits. Employer asked the Commission to reconsider its decision and this request was denied. This appeal by Employer followed.

■ An appellate court may reverse or otherwise modify the Commission's decision only if it finds: "(1) That the [C]ommission acted without or in excess of its powers;" "(2) That the award was procured by fraud;" "(3) That the facts found by the [C]ommission do not support the award;" or "(4) That there was no sufficient competent evidence in the record to warrant the making of the award." § 288.210, RSMo 2000.[3] The Court defers to the factual findings of the Commission but is not bound by the Commission's conclusions of law or the application of the facts to the law. § 288.210, RSMo 2000; *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). In examining the record, we "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Id.* at 222–23. "We defer to the Commission's determinations on issues resolving matters of witness credibility and conflicting evidence." *Mauller v. Div. of Empl. Sec.*, 331 S.W.3d 714, 716 n. 2 (Mo.App.2011). "The Commission's decision should not be overturned unless it is contrary to the overwhelming weight of the evidence." *Kraemer v. Qual. Heating & Air Cond., Inc.*, 329 S.W.3d 761, 762 (Mo.App.2011). The reviewing court is *not* to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Hampton*, 121 S.W.3d at 223. Instead, we must objectively review the entire record, including evidence and inferences drawn therefrom that are contrary to, or inconsistent with, the Commission's award. *E.P.M. Inc. v. Buckman*, 300 S.W.3d 510, 517 (Mo. App.2009).

■ Further, "[w]e review the Commission's decision ... and not the decision of the Division deputy or [A]ppeals [T]ribunal," *Stanton v. Div. of Empl. Sec.*, 321 S.W.3d 486, 488 (Mo.App.2010); however, where as here, the Commission adopts the findings of the Appeals Tribunal we are necessarily called upon to examine those findings in our review of the Commission's decision. *See Lightwine v. Republic R–III School Dist.*, 339 S.W.3d 585, 589 n. 1 (Mo.App.2011).

■ In its first point relied on Employer asserts the Commission erred in setting

---

**3.** Unless otherwise stated, all other statutory references are to RSMo Cum.Supp.2006.

aside the October of 2009 Appeals Tribunal decision and in remanding the matter for a new hearing. Employer maintains such a ruling misapplied the law and was not supported by sufficient evidence because "there was no evidence before the Commission that Claimant had exercised due diligence in attempting to present a complete record or that any deficiencies in the [transcript from the first hearing] were prejudicial to Claimant."

In its argument, Employer relies heavily on *Jackson v. State*, 514 S.W.2d 532, 533 (Mo.1974), for the proposition that Claimant had a requirement to exercise due diligence to correct any deficiencies in the transcript. In *Jackson*, the defendant, who had been convicted of murder, took issue with the fact that certain statements made by the trial court in the presence of the jury were "not reported by the official Court Reporter" such that they were not included in the transcript of the proceedings. *Id.* On appeal he argued this deficiency in the transcript

> denied [him] fundamental constitutional and statutory rights to full appellate review and hence due process of law by being deprived of a full and complete transcript. Citing statutes, decisions, rules and canons of judicial ethics, he asserts his guaranteed right to a complete transcript; claims no adequate substitute for a full transcript is available; objects that the question of prejudicial error cannot be adjudicated because the exact language used by the trial court is irrecoverable; denies that proof of the prejudicial effect of the remarks is required of him 'because such proof is inherently impossible,' and concludes that as a consequence he is entitled to have the conviction set aside and a new trial ordered.

*Id.* While noting that "[a] losing party is entitled to appellate review based upon a

full, fair and complete transcript on appeal," the appellate court found that it was the defendant's burden to prepare and file the transcript on appeal. *Id.* It found

> [t]hat obligation is not discharged by the simple expedient of ordering the official court reporter to prepare a transcript and then filing whatever is prepared. If the transcript prepared is defective or omits material matters it is appellant's duty to take steps to supply the omission or cure the defect. Appellants are required to exercise due diligence in this regard, and an appellant will not be granted a new trial on account of the absence of a transcript (or failure to file a full and complete transcript) ... or if appellant fails to establish prejudice as a result of inability to present a complete record.

*Id.* Accordingly, the appellate court denied the defendant's request for relief. *Jackson*, 514 S.W.2d at 533. The present matter differs from *Jackson* in several ways not the least of which is the fact that in *Jackson* it was the defendant who was requesting a new trial and in this instance it was the Commission that ordered a new trial *sua sponte.*

With that being said, we are persuaded by the Commission's citations to statutory authority. Section 288.190.2 requires that

> [a] full and complete record shall be kept of all proceedings in connection with a disputed determination.... The [A]ppeals [T]ribunal shall include in the record and consider as evidence all records of the [D]ivision that are material to the issues. All testimony at any hearing shall be recorded but need not be transcribed unless the matter is further appealed.

Further, the Commission is empowered to remand proceedings to the Appeals Tribunal with directions, which is what occurred in the present matter. § 288.200.1, RSMo

2000; 288.190.2. The Commission here determined it was unable to provide proper review of Claimant's case with the inadequate transcript from the hearing before the Appeals Tribunal.[4] As such, it remanded the matter for the development of a complete record as it was permitted to do under the statutes above.

Additionally, the actions of the Commission in remanding for a new hearing not only served to aid it in resolution of the issues raised by Claimant, but its actions assisted this Court in our review of the record, as it is not uncommon in unemployment compensation cases for cases to be remanded by the appellate court to the Commission due to inadequacies in a transcript or other transcription issues. For example, in *Bayne*, 109 S.W.3d at 231, the transcript from the appeals tribunal contained twenty-eight notations that portions were "unintelligible" with many of these notations occurring during testimony relating to the claimant's defense for leaving her position with the employer. Due to these deficiencies in the record, the appellate court found it was necessary to remand the matter to the Commission because "[w]ithout an adequate record ...," it was unable to determine "whether competent and substantial evidence exists to support the findings of the Commission." *Id.* Likewise, in *Gordon v. Labor and Indus. Rel. Comm'n*, 723 S.W.2d 903, 904 (Mo.App.1987), on "seven pages of a fourteen-page transcript representing claimant's testimony, the reporter wrote 'unintelligible' forty-seven times" with many of these instances occurring relating "to whether [the] claimant may have left his job because of a physical inability to do kitchen work." *Id.* The reviewing court found that "[w]hile a certain number of

'unintelligibles' may be expected in this kind of case, the transcript taken as a whole is incoherent and insufficient to reflect the testimony of [the] claimant" and the matter necessarily had to be remanded to the Commission for "another hearing...." *Id.* The deficiencies found in the transcript in the instant matter are similar to the deficiencies found in the transcripts in *Bayne* and *Gordon* such that if the Commission had not undertaken to remand for a new hearing, this Court would certainly have been forced to do so in our review of the inadequate and deficient initial hearing transcript.

The Commission lawfully exercised its power to remand this matter to the Appeals Tribunal when it was unable to decipher portions of the initial hearing transcript. It did so in order to offer a full and complete review of the parties' claims and arguments. This Court fails to see how Employer was prejudiced from the remand and the second hearing. It only served to give Employer an additional chance to make its case and ultimately provided the Commission with a more comprehensive view of the evidence. It is our view that Employer only now complains because the outcome of the second hearing differed from the first in that Employer no longer prevailed. The Commission did not abuse its discretion in ordering a new hearing in the instant matter. Point I is denied.

█ In its second point relied on Employer asserts the Commission erred in adopting the ruling of the Appeals Tribunal which excluded the transcript from the first hearing at the second hearing. Employer argues such a ruling misapplied the

---

4. Employer admits in the record and in its brief that the transcript here was inadequate. Its complaint herein is with the manner in which the deficient transcript was corrected.

It desired to correct and/or supplement the original hearing transcript as opposed to having an entirely new hearing.

law and exceeded the Commission's authority in that "the First Hearing Transcript was admissible pursuant to [section] 288.190.2 [5] and 8 CSR 10–5.015(10)(B),[6] and the exclusion of the First Hearing Transcript denied Employer a meaningful opportunity to be heard."

■ Here, following remand, at the second hearing before the Appeals Tribunal, Employer attempted to enter into evidence the transcript from the first hearing on two occasions. Both times this request was denied by the Appeals Tribunal. It is within the discretion of the fact-finder as to whether to admit or exclude evidence and such a decision "will not be overturned absent an abuse of discretion." *Garrett v. Treasurer of State of Missouri as Custodian for Second Injury Fund,* 215 S.W.3d 244, 249 (Mo.App.2007). In light of the Commission's order for an entirely new hearing, which guaranteed Employer's right and opportunity to call any witnesses it desired, and Employer's ability to use the first transcript for impeachment purposes if needed, we find no abuse of discretion, and definitely no prejudice. Further, 8 CSR 10–5.015(10)(B)(4) provides that "[e]vidence is admissible if it is not irrele-

vant, immaterial, privileged or unduly repetitious." *See also Weinbaum,* 223 S.W.3d at 914. Had it been admitted, the transcript in this matter would have been "unduly repetitious." 8 CSR 10–5.015(10)(B)(4). Employer fails to show how such a ruling exceeded the Commission's authority under section 288.190.2 and 8 CSR 10–5.015(10)(B) or denied Employer meaningful review. The Commission did not abuse its discretion. Point II is denied.

■ In its third point relied on Employer maintains the Commission erred in affirming the decision of the Appeals Tribunal and in finding that Claimant was not disqualified from benefits. Employer argues this conclusion was not supported by sufficient evidence because there was evidence in the record that Claimant "disregarded and disobeyed specific directions given to him by management related to a quote for one of Employer's customers, and such actions constituted misconduct connected with Claimant's work."

■ If an employee is discharged for misconduct connected with his work, he is

---

5. Section 288.190.2 provides in part:
   [t]he manner in which disputed determinations, referred claims, and petitions for reassessment shall be presented and the conduct of hearings shall be in accordance with regulations prescribed by the [D]ivision for determining the rights of the parties, whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure....

6. 8 CSR 10–5.015(10)(B) provides in pertinent part:
   In any hearing before a hearing officer, the following shall be the applicable rules of evidence and procedure:
   1. Oral evidence shall only be taken by oath or affirmation;
   2. [E]ach party has the right to call and examine witnesses, to introduce exhibits, to cross-examine opposing witnesses on any

matter relevant to the issues even though that matter was not a subject of the direct examination, to impeach any witness, regardless of which party first called the witness to testify, and to rebut the evidence against him/her;
   ....
   4. The hearing need not be conducted according to the common law or statutory rules of evidence or the technical rules of procedure. Hearsay evidence is generally admissible. Evidence is admissible if it is not irrelevant, immaterial, privileged or unduly repetitious.... The hearing officer shall rule on the admissibility of all evidence. Any evidence received without objection which has probative value shall be considered by the hearing officer along with other evidence in the case....

disqualified from receiving unemployment benefits. § 288.050.2. "Misconduct" is defined as

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest of the employee's duties and obligation to the employer.

§ 288.030.1(23). "Each of these criteria for finding an employee engaged in misconduct has an element of culpability or intent" such that " '[w]illful misconduct is established by showing that the claimant's actions amounted to a conscious disregard for the interests of the employer or constituted behavior contrary to that which an employer has a right to expect.' " *Jenkins v. George Gipson Enter., LLC*, 326 S.W.3d 839, 842 (Mo.App.2010) (quoting *Williams v. Enter. Rent–A–Car Shared Servs., LLC*, 297 S.W.3d 139, 142 (Mo.App.2009)).

▆▆▆▆ Although the burden of proving eligibility for unemployment compensation benefits initially lies with the claimant, "once an employer alleges that the claimant was discharged for misconduct connected with work, the burden shifts and the employer must demonstrate such misconduct." *Freeman v. Gary Glass & Mirror, LLC*, 276 S.W.3d 388, 391 (Mo.App. 2009). "In order to do so, the employer must show, by a preponderance of the evidence, that the claimant willfully violated the rules or standards of the employer or that the claimant knowingly acted against the employer's interest." *Id.* "Whether the employee's conduct qualifies as misconduct connected with work is a determination of law, which this [C]ourt

reviews independently." *Sakaguchi v. Missouri Dept. of Corrections*, 326 S.W.3d 890, 894 (Mo.App.2010). " 'On matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determination.' " *Id.* (quoting *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 198 (Mo.App. 2007)).

▆▆▆▆ While it has been held that the "violation of a reasonable work rule can constitute misconduct," such a violation is not "dispositive proof of misconduct connected with work." *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660, 665 (Mo. App.2003). "Instead, a reasonable work rule serves as a relevant factor in determining if the behavior at issue is in fact misconduct and if such misconduct is connected with work." *Id.* (internal quotation omitted). In cases dealing with misconduct, "[t]he initial requirement is that the employee in some way willfully violate[d] the rules and standards of the employer." *Wieland v. St. Anthony's Medical Center*, 294 S.W.3d 77, 79 (Mo.App.2009) (emphasis omitted). To willfully disregard employer's interests, a claimant must be aware of the requirement and knowingly or consciously violate it. *McClelland*, 116 S.W.3d at 666. "There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct and disqualify the claimant for unemployment-compensation benefits." *Wieland*, 294 S.W.3d at 79; *McClelland*, 116 S.W.3d at 665. Without evidence that an employee " 'deliberately or purposefully erred [the employee] cannot properly be found to have committed an act of misconduct.' " *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 899 (Mo.App.2008) (quoting *Murphy v. Aaron's Auto. Prods.*, 232

S.W.3d 616, 621 (Mo.App.2007)). Further, "[p]oor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *McClelland,* 116 S.W.3d at 665.

■ Here, Employer maintains that Claimant faxed a price quotation to Gold Mechanical that was in violation of a direct order given to him by Mr. Hubbell.[7] Claimant testified he did not send the fax at issue. He related that he always sent a cover sheet with faxes to customers and the fax at issue did not have a cover sheet. He also related the quotes he typically prepared had a time stamp in the upper left corner as well as a report number in the upper right corner and the exhibit of the one at issue did not. Further, he related he did not include replacement costs on quotes sent to customers but the fax entered into evidence contained such a cost. While he admitted the fax contained his typewritten initials, he also related that he often left his computer unattended and that any document created on his computer would contain those initials. The Commission chose to believe the testimony of Claimant and, in fact, specifically noted in its findings that it found Claimant's assertions to be more credible than the evidence offered by Employer. As already stated, we defer to the Commission in its findings relating to witness credibility, *Mauller,* 331 S.W.3d at 716–17 n. 2, and " '[w]hen the Commission, as a trier of fact, has reached one of two possible conclusions from the evidence, we will not reach a contrary conclusion even if we might have reasonably done so.' " *E.P.M.,* 300 S.W.3d at 517 (quoting *Sartori v. Kohner Props., Inc.,* 277 S.W.3d 879, 885 (Mo.App.2009)). The Commission's finding is supported by competent and substantial evidence. Point III is denied.

■ In its fourth point relied on Employer asserts the Commission

> erred in adopting the findings of [the Appeals Tribunal] that disregarded Employer's evidence solely on the basis that it was contrary to Claimant's first-hand testimony, because such ruling was not supported by sufficient competent evidence and misapplied that law, in that the ruling ignored Employer's first-hand evidence based on a review of the business records involved, ignored prior findings . . ., and applied the wrong legal standard in basing credibility determination solely on a comparison of the nature of the accounts.

As with Point III above, Employer takes issue with the Commission's findings relating to the credibility of the evidence introduced by Employer and that of Claimant. Specifically, Employer protests the Commission's use of the phrase "[t]he president's testimony that the claimant faxed the quote to the customer is not credible because that testimony was contrary to [Claimant]'s first-hand testimony that he did not fax the quote." Employer argues that such a finding "is more in the nature of a legal conclusion than a determination of credibility." We disagree. Where the Commission's determinations turn on credibility of the witnesses, this Court affirms the decision of the Commission. *See Sartori,* 277 S.W.3d at 885. This is clearly a credibility determination and we defer to the Commission. *Id.* The Commission's finding is supported by competent and substantial evidence. Point IV is denied.

---

7. We note that in the argument portion of this point relied on Employer only discusses the situation involving the sending of the fax and does not discuss any of the other instances of supposed insubordination discussed at the hearing or in the Commission's findings.

The decision of the Commission is affirmed.

SCOTT, J., and FRANCIS, P.J., concur.